**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| THOMAS DOBOSZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>QUAKER CHEMICAL CORPORATION,<br><br>                    Defendant. | CASE NO.:  2-15-CV-203 |

**BRIEF OF DEFENDANT QUAKER CHEMICAL CORPORATION IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| **BURKE COSTANZA & CARBERRY LLP** | **FOX ROTHSCHILD LLP** |
| Terence M. Austgen (#2484-49) | David J. Garraux (PA #204350) |
| Elizabeth M. Bezak (#16648-64) | BNY Mellon Center |
| 9191 Broadway | 500 Grant Street |
| Merrillville, IN 46410 | Pittsburgh, PA 15219 |
| (219) 769-1313 | (412) 394-6585 |

*Counsel for Defendant Quaker Chemical Corporation*

## TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1

II.    STATEMENT OF FACTS ......................................................................................3

     A.     Plaintiff Suffered Two Workplace Injuries, One of Which Resulted in Permanent Work Restrictions ........................................................................................3

     B.     Plaintiff's Permanent Work Restrictions Precluded Him From Performing the Essential Functions of His Position. ............................................................4

III.   SUMMARY JUDGMENT STANDARD ...............................................................5

IV.    ARGUMENT ..........................................................................................................6

     A.     Plaintiff's Disability Discrimination Claim Fails as a Matter of Law. .......................6

          i.     Plaintiff is Not "Disabled" Within the Meaning of the ADA. ...........................7

          ii.     Plaintiff is Not a "Qualified Individual with a Disability." .............................10

          iii.     Quaker Could Not Reasonably Accommodate Plaintiff's Permanent Work Restrictions .....................................................................................13

     B.     Plaintiff's Age Discrimination Claim Fails as a Matter of Law. ..............................16

          i.     Plaintiff Failed to Adequately Plead an Age Discrimination Claim. ...............16

          ii.     Plaintiff Lacks Any Direct Evidence of Age Discrimination .........................17

          iii.     Plaintiff Lacks Any Indirect Evidence of Age Discrimination........................18

               a.     Plaintiff Failed to Meet Quaker's Legitimate Employment Expectations. ..............................................................................19

               b.     Quaker Did Not Treat Similarly Situated Under-40 Employees More Favorably Than Plaintiff. ..........................................................20

     c.     Plaintiff's Constitutional Tort Claim Fails as a Matter of Law. ..............................22

V.     CONCLUSION.....................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Anderson v. Jewel Food Stores, Inc.*,
37 F. Supp. 2d 826 (N.D. Ill. 2011) ...................................................................................23

*Avet v. Dart*,
No. 14 C 4555, 2016 WL 757961 (N.D. Ill. Feb. 26, 2016)..................................................8

*Baert v. Euclid Beverage, Ltd.*,
149 F.3d 626 (7th Cir. 1998) .........................................................................................13

*Barket v. NextiraOne, LLC.*,
No. CIV. 01-278ADM/AJB, 2002 WL 1457631 (D. Minn. July 3, 2002),
*aff'd sub nom. Barket v. Nextira One*, 72 F. App'x 508 (8th Cir. 2003) ..............................20

*Basith v. Cook Cty.*,
241 F.3d 919 (7th Cir. 2001). ........................................................................................11

*Carothers v. Cty. of Cook*,
808 F.3d 1140 (7th Cir. 2015) .....................................................................................8, 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................................5

*Chaib v. Indiana,*
744 F.3d 974 (7th Cir. 2014) ........................................................................................21

*Christian v. St. Anthony Med. Ctr., Inc.*,
117 F.3d 1051 (7th Cir. 1997) .........................................................................................7

*Cochrum v. Old Ben Coal Co.*,
102 F.3d 908 (7th Cir. 1996) ........................................................................................15

*Dominguez v. Int'l Steel Grp., Inc.*,
No. 2:05-CV-300-PRC, 2007 WL 79174 (N.D. Ind. Jan. 5, 2007) ..................................5, 6

*Dyke v. O'Neal Steel, Inc.*,
327 F.3d 628 (7th Cir. 2003) ........................................................................................13

*England v. ENBI Indiana, Inc.*,
102 F. Supp. 2d 1002 (S.D. Ind. 2000) ..................................................................13, 15, 16

*Feldman v. Olin Corp.*,
692 F.3d 748 (7th Cir. 2012) .........................................................................................10

*Girten v. Town of Schererville*,
    819 F. Supp. 2d 786 (N.D. Ind. 2011) ................................................................6

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)...........................................................................................19

*Hawkins v. Nat'l Collegiate Athletic Ass'n*,
    652 F. Supp. 602 (C.D. Ill. 1987) ....................................................................23

*Hummel v. St. Joseph Cty. Bd. of Comm'rs*,
    No. 14-3284, 2016 WL 1128487 (7th Cir. Mar. 23, 2016)..................................5

*Jenkins v. Lifetime Hoan Corp.*,
    259 F. App'x 863 (7th Cir. 2008) ....................................................................18

*Jones v. LaPorte Cty. Sheriff's Dep't*,
    No. 3:13-CV-1330 JD, 2016 WL 1254367 (N.D. Ind. Mar. 29, 2016) .........11, 12

*Jones v. Maryland Nat'l Capital Park & Planning Comm'n*,
    No. 8:04-CV-01818-AW, 2005 WL 5870422 (D. Md. Oct. 31, 2005) ...............20

*Langreder v. Freeman Expositions, Inc.*,
    No. 13-CV-0371, 2016 WL 537953 (N.D. Ill. Feb. 11, 2016). ..........................20

*Lawson v. Diehl Machines, Inc.*,
    No. 3:98-CV-194RP, 1999 WL 325064 (N.D. Ind. Apr. 16, 1999) ...................16

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)...........................................................................................22

*Massey v. Johnson*,
    457 F.3d 711 (7th Cir. 2006) ..............................................................................6

*Mobley v. Allstate Ins. Co.*,
    531 F.3d 539 (7th Cir. 2008) ...................................................................6, 13, 20

*Naik v. Boehringer Ingelheim Pharm., Inc.*,
    627 F.3d 596 (7th Cir. 2010) ......................................................................17, 19

*Nawrot v. CPC Int'l*,
    277 F.3d 896 (7th Cir. 2002) ..............................................................................7

*Nowak v. St. Rita High Sch.*,
    142 F.3d 999 (7th Cir. 1998) ......................................................................12, 16

*Peele v. Country Mut. Ins. Co.*,
    288 F.3d 319 (7th Cir. 2002) ............................................................................19

iv

*Pitasi v. Gartner Grp., Inc.*,
    184 F.3d 709 (7th Cir. 1999) ..................................................................17, 22

*Ridlen v. Four Cty. Counseling Ctr.,*
    809 F. Supp. 1343 (N.D. Ind. 1992) ................................................................23

*Smith v. Wilson*,
    705 F.3d 674 (7th Cir. 2013) .........................................................................19

*Teruggi v. CIT Group/Capital Finance, Inc.,*
    709 F.3d 654 (7th Cir 2013) ..........................................................................22

*Weiler v. Household Fin. Corp.*,
    101 F.3d 519 (7th Cir. 1996) ...................................................................9, 10, 13

*Williams v. Eastside Lumberyard & Supply Co.*,
    190 F. Supp. 2d 1104 (S.D. Ill. 2001)................................................................15

**Statutes**

42 U.S.C. § 1983...............................................................................................22, 23

42 U.S.C. § 12102.....................................................................................................7

42 U.S.C. § 12111(8) .........................................................................................10, 13

**Rules**

Fed R. Civ. P. 56.............................................................................................5, 6, 17

**Regulations**

29 C.F.R. § 1630.2 ........................................................................................7, 10, 11

## I.      <u>INTRODUCTION</u>

This is an employment discrimination action filed by Thomas Dobosz ("Plaintiff"), an employee lawfully separated from Quaker Chemical Corporation ("Quaker" or the "Company") when his permanent work restrictions precluded him from performing the essential functions of his job as Site Engineer.  While receiving treatment for an April 2012 slip-and-fall injury, Plaintiff confirmed to his therapists that his job required pushing, pulling and lifting heavy objects weighing up to 50 pounds, including jugs of chemicals and heavy, charged hoses.  Plaintiff's doctors then cleared Plaintiff to return to work after a 10-month absence with permanent restrictions stating that he could no longer perform the physically demanding job tasks he admitted he often did.  Thus, Quaker did not terminate Plaintiff due to his purported "disability" or his age—it terminated Plaintiff because he was permanently restricted from performing overhead work, and pushing, pulling or lifting more than 30 pounds, all of which were required job functions of a Site Engineer and which Plaintiff could not perform—per his physician's instructions—with or without reasonable accommodation.

Plaintiff advances three theories of recovery in his Complaint, all of which fail as a matter of law.  *First*, Plaintiff contends that he is disabled and Quaker discriminated against him by failing to accommodate his permanent work restrictions.  This argument, however, presupposes that Plaintiff was "disabled" under the Americans with Disabilities Act ("ADA") of 1990, as amended by the ADA Amendments Act of 2008.  Plaintiff was not "disabled" within the meaning of the ADA because his work restrictions did not "substantially limit" his ability to "work" *generally*, but only precluded him from holding a *specific* position—Site Engineer for Quaker.  Furthermore, even assuming a disability existed, Plaintiff was not a "qualified individual" under the ADA, as his permanent work restrictions—which stated he could not perform any overhead work or push, pull or lift more than 30 pounds—precluded him from

1

fulfilling the essential functions of a Site Engineer, with or without reasonable accommodation. And, in any event, after doctors cleared Plaintiff to return to work, Plaintiff never contacted Quaker to initiate the interactive process and discuss his return to work. Instead, Plaintiff willingly continued to collect his full salary from Quaker while waiting for the Company to track him down.

*Second*, Plaintiff alleges that Quaker violated Title VII of the Civil Rights Act of 1964 by terminating Plaintiff based on his age. As a threshold matter, age is not a protected class under Title VII. Even setting aside Plaintiff's deficient pleading, Plaintiff nonetheless has failed to demonstrate (i) that, at the time of his termination, he was meeting Quaker's legitimate employment expectations, or (ii) that Quaker treated younger, similarly situated employees more favorably than him. Plaintiff must do more than show that Quaker terminated him when he was over 40 years old to proceed past summary judgment. Perhaps the best evidence that Quaker did not discriminate against Plaintiff on the basis of his age was that the Company initially hired him in 2003 when he was 54-years old and then *promoted* him in 2008 when he was 59-years old.

*Finally*, Plaintiff contends that Quaker violated his constitutional rights, but Quaker is not a state actor, and none of the Company's employees ever acted under the color of state or federal law. The United States Constitution only constrains government actors—which Quaker is not— and thus Plaintiff's Section 1983 claim fails. In short, because Plaintiff cannot establish the required elements for his disability discrimination claim, his age discrimination claim or his constitutional tort claim, summary judgment must be granted for Quaker.

## II.        STATEMENT OF FACTS[1]

### A.    Plaintiff Suffered Two Workplace Injuries, Only One of Which Resulted in Permanent Work Restrictions.

From 2003 through 2013, Plaintiff worked for Quaker at ArcelorMittal's Indiana Harbor West steel mill (the "Plant").  [SMF 6-9] Quaker hired Plaintiff as a Technical Service Specialist in 2003, when he was 54-years old, and promoted Plaintiff to Site Engineer in 2008, when he was 59-years old.  [SMF 6-9; 25-27]

Plaintiff suffered his first workplace injury at the Plant on September 23, 2005, when he hit his head on a doorway.  [SMF 10-12]  Plaintiff missed only three days of work and attended physical therapy to rehabilitate his injuries.  [SMF 15-17]  The only work accommodation Plaintiff requested was having another worker cover his shift when he attended physical therapy, and Quaker complied with this request.  [SMF 15-17]  Plaintiff never informed Quaker of any temporary or permanent work restrictions arising from his 2005 injury, or his need for any additional accommodations beyond having his superiors fill in for him while he attended physical therapy sessions.  [SMF 18-24]

Plaintiff purportedly suffered a second workplace injury at the Plant on April 20, 2012, when he allegedly slipped and fell while walking down a set of stairs leading to the basement of the tandem mill.  [SMF 52-55]  Plaintiff again had to attend physical therapy to rehab his injuries, which Quaker readily accommodated.  [SMF 56-58]  In the months following Plaintiff's injury, ArcelorMittal complained to Quaker about Plaintiff's work performance, which resulted in a meeting between the Plant's Cold Mill Manager and Quaker.  [SMF 65-70]  In response to ArcelorMittal's complaints, Quaker's management and human resources department met with

---

[1]    Pursuant to Local Rule 56-1(a), Quaker submitted a separate, more detailed Statement of Material Facts (hereinafter, "SMF"), which is attached hereto and incorporated by reference as though set forth in full.  Nonetheless, Quaker briefly highlights the following critical facts in this brief to demonstrate that Plaintiff's claims cannot survive summary judgment.

Plaintiff on August 27, 2012 and expressed the Company's concerns regarding Plaintiff's inadequate performance. [SMF 65-70] As a follow up to that meeting, Quaker sent Plaintiff a confirmation e-mail on August 28, 2012, which stated that the Company understood that Plaintiff had "no work restrictions" and that it expected Plaintiff to improve his performance. [SMF 71-74] Plaintiff never responded to that e-mail. [SMF 71-74]

> **B.    Plaintiff's Permanent Work Restrictions Precluded Him From Performing the Essential Functions of His Position.**

Plaintiff eventually underwent surgery and further rehabilitation for his 2012 injuries, which resulted in him missing nearly 10 months of work from October 2012 through August 2013. [SMF 75-80] Quaker held Plaintiff's position open during that entire 10-month period and continued to pay Plaintiff's full salary. [SMF 80] Plaintiff was eventually cleared for work with "permanent" work restrictions in June 2013, and those restrictions stated that Plaintiff could not (i) perform overhead work or (ii) push, pull or lift more than 30 pounds. [SMF 76] Plaintiff's job as Site Engineer required that he regularly perform overhead work, as well as push, pull and lift items of more than 30 pounds. [SMF 28-34; 42-51] Plaintiff stated to his therapists at Accelerated Rehabilitation Center ("Accelerated") that his job required a medium-heavy physical load, that he had to lift 50 pounds both from the floor to his waist and over his head, and that he had to lift and pull "fairly heavy" two-to-three inch hoses to fill large storage totes and tanks with chemicals. [SMF 59-64] These essential job tasks for the Site Engineer position at Indiana Harbor West were further confirmed through Quaker's job description for Plaintiff's role, as well as Quaker's understanding of the work Plaintiff performed, and the work actually performed by Plaintiff as Site Engineer between 2008 and 2012. [SMF 28-34; 42-51; 59-64]

After Quaker received correspondence from Plaintiff's physicians confirming that his permanent work restrictions precluded him from performing the Site Engineer's essential

4

responsibilities, the Company explored accommodation options, searching for available opportunities and writing to Plaintiff to confirm that it accurately understood Plaintiff's physical limitations.  [SMF 80-98]  Quaker provided Plaintiff with a tentative 30-day notice of termination and requested that Plaintiff contact Quaker if he could provide other information that might facilitate his continued employment with Quaker.  [SMF 91-98]  Rather than engage in the interactive process with Quaker, Plaintiff responded to Quaker's tentative employment decision by selling his house in Indiana, moving to Florida, seeking to cash out his pension and accrued vacation days, and commencing litigation against Quaker.  [SMF 101-116]

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is an "integral part of the Federal Rules" and should be granted in this instance because the record demonstrates that there is no genuine issue of material fact regarding Plaintiff's discrimination and constitutional claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 327 (1986); Fed R. Civ. P. 56(a).  The rules regarding summary judgment apply with the same force in the employment discrimination context as in other types of civil cases. "[N]o heightened standard of summary judgment exists in employment discrimination cases nor is there a separate rule of civil procedure governing summary judgment in employment cases." *Dominguez v. Int'l Steel Grp., Inc.,* No. 2:05-CV-300-PRC, 2007 WL 79174, at *3 (N.D. Ind. Jan. 5, 2007).  Indeed, "summary judgment in favor of the defendant is hardly unknown, or for that matter rare, in employment discrimination cases." *Id*

As the moving party in this employment discrimination case, Quaker satisfies its initial burden of production and demonstrates that no genuine issue of material fact exists by "(1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, No. 14-3284, 2016 WL

1128487, at *3 (7th Cir. Mar. 23, 2016). Quaker has satisfied its initial burden by demonstrating that no record evidence supports Plaintiff's disability discrimination claim, age discrimination claim or constitutional tort claim.

While "[a] plaintiff in an employment discrimination case may prove discrimination through either direct or indirect evidence . . . [r]egardless of the method, the burden is on the plaintiff to demonstrate that genuine issues exist for trial." *Dominguez*, 2007 WL 79174, at *3. Because Plaintiff, as the non-moving party here, cannot "establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial . . . Rule 56(c) mandates entry of summary judgment against [Plaintiff] because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (quotations and citations omitted).

## IV.    <u>ARGUMENT</u>

### A.    Plaintiff's Disability Discrimination Claim Fails as a Matter of Law.

"The ADA prohibits disability-based discrimination and has two distinct categories of disability claims—failure to accommodate and disparate treatment." *Girten v. Town of Schererville*, 819 F. Supp. 2d 786, 797 (N.D. Ind. 2011). Plaintiff seeks relief under the latter theory and alleges that Quaker "refused to accommodate" his permanent work restrictions arising out of his 2012 slip-and-fall incident at the Plant. *See* Dkt. No. 3, Compl., at p. 2.

"A failure to accommodate claim requires the plaintiff to show: (1) he is a qualified individual with a disability who could perform the essential functions of the job with or without a reasonable accommodation; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability." *Girten*, 819 F. Supp. 2d at 797; *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008) ("[T]o prevail on this claim, [plaintiff] must

show: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.") (quotations and citations omitted).  Plaintiff does not present an actionable failure to accommodate claim here because (i) he is not "disabled" under the ADA, (ii) he is not a "qualified individual with a disability," and (iii) Quaker could not reasonably accommodate Plaintiff's permanent work restrictions.

i.      Plaintiff is Not "Disabled" Within the Meaning of the ADA.

"[N]ot all plaintiffs with health conditions have a 'disability' within the meaning of the ADA."  *Nawrot v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir. 2002).  "The Act is not a general protection of medically afflicted persons.  It protects people who are discriminated against by their employer . . . either because they are in fact disabled or because their employer mistakenly believes them to be disabled."  *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997).

Under the ADA, a person is defined as having a "disability" if he has, *inter alia*, a "physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2)(A); *Nawrot*, 277 F.3d at 903 ("An individual has a 'disability' within the meaning of the ADA if [he] has a physical or mental impairment that substantially limits one or more of the major life activities of such individual.").  An impairment is "substantially limiting" only if it prevents "the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(ii).  One type of "major life activity" is "working."  29 C.F.R. § 1630.2(i)(1).

Quaker does not contest that Plaintiff's permanent work restrictions impacted his ability to "work" as a Site Engineer at the Plant, and thus implicate a "major life activity" as defined in ADA.  Nonetheless, Plaintiff's work restrictions did not "substantially limit" his ability to

7

"work" generally, and as a result, Plaintiff is not "disabled" under the ADA. "The fact that plaintiff is unable to perform a particular job for a particular employer is ordinarily not sufficient to establish a substantial limitation on the ability to work; rather, the impairment must substantially limit employment generally." *Avet v. Dart*, No. 14 C 4555, 2016 WL 757961, at *4 (N.D. Ill. Feb. 26, 2016) (granting summary judgment for employer when "it is not clear, on this record, that Plaintiff is disabled within the meaning of the ADA"). "[I]f 'working' is the only major life activity [plaintiff] claims is impaired, then she has to show that her [impairment] significantly restricted her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Carothers v. Cty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015).

Here, Plaintiff has presented no evidence that his permanent physical restrictions precluded his from obtaining employment in a class of jobs (*e.g.*, Site Engineers, generally) or a broad range of jobs (*e.g.*, jobs in the chemical management services industry). Plaintiff received clearance to return to work at Quaker on June 24, 2013 with "permanent restrictions" of "no lifting, pushing, pulling greater than 30 pounds frequently, greater than 30 pounds occasionally. No overhead work." [SMF 76] Plaintiff, however, has presented no evidence that these restrictions impacted his ability to secure other employment, *i.e.*, employment that did not involve climbing ladders and carrying charged hoses. To the contrary, the evidence establishes that, even prior to his termination, Plaintiff decided that he did "not wish to return to work" once he finished rehabilitation for his 2012 injury. [SMF 112] Plaintiff's lack of desire to return to work is underscored by the fact that he listed his Indiana home for sale—which he had no mortgage on—four days *prior* to receiving Quaker's tentative notice of termination on August 7, 2013. [SMF 107-110]

Plaintiff's lack of desire to continue working is further evidenced by his inaction once Quaker notified him of the Company's tentative decision to terminate his employment. Quaker's August 7, 2013 letter stated that the Company was "unable to accommodate you in your current role of Site Engineer I" and that it had "reviewed other Quaker job openings" but had "not been able to identify any current openings in which we can accommodate these permanent restrictions, or for which you are qualified." [SMF 94-95] The letter also invited Plaintiff to contact Quaker "immediately" if he "believe[d] there are other alternatives we have not considered." [SMF 96-97] Plaintiff never contacted Quaker to discuss other potential work alternatives; instead, six days after receiving the letter, Plaintiff called Quaker's human resources department to request information regarding his pension and vacation payout. [SMF 102-104]

Furthermore, once Plaintiff moved to Florida, he admitted that he never uploaded his resume to any online job search website, and that, even if he would have done so, he would not have accepted any job that paid him less $53,000 per year. [SMF 113-116] Plaintiff's inaction, coupled with his inflexibility, indicates he had no desire to continue working, whether it be with Quaker or otherwise. At most, the record establishes that Plaintiff could not physically perform one specific job—Site Engineer at the Plant—not that Plaintiff was prohibited from working in the chemical services industry and/or performing laboratory tests and analyses for another employer. This is plainly insufficient to establish that Plaintiff was "substantially limited" in his ability to "work." *See Carothers*, 808 F.3d at 1148 (7th Cir. 2015) (granting summary judgment for defendant on the basis that plaintiff "has not established that she is disabled within the meaning of the ADA" because "[t]here is no evidence that [plaintiff's] anxiety disorder would prevent her from engaging in any other line of occupation" and her impairment "does not restrict [plaintiff] from performing either a class of jobs or a broad range of jobs"); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996) (concluding that plaintiff "is not 'disabled' as that

9

term is used in the ADA" because plaintiff's "exclusion from one position of employment does not constitute a substantial limitation of a 'major life activity'").

        ii.    <u>Plaintiff is Not a "Qualified Individual with a Disability."</u>

Even assuming, *arguendo*, that Plaintiff is "disabled" for purposes of the ADA, Plaintiff's disability discrimination claim remains meritless for the additional reason that he is a not a "qualified individual" who, with or without a reasonable accommodation, can perform the essential functions of Site Engineer. *See* 42 U.S.C. § 12111(8); *Feldman v. Olin Corp.*, 692 F.3d 748, 755 (7th Cir. 2012) ("[T]o survive summary judgment [plaintiff] must also show that he is a "qualified individual," *i.e.*, that he is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.") (quotations and citations omitted).

Plaintiff must satisfy "a two-step test" to establish that he is a "qualified individual" under the ADA: (1)"First, the individual must satisfy the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc."; and (2) "Second, the individual must be able to perform the essential functions of the position held or desired, with or without reasonable accommodation." *Weiler*, 101 F.3d at 524; 29 C.F.R § 1630.2(m). Plaintiff fails the latter portion of the "qualified individual" test, as he was unable to perform the essential functions of Site Engineer at the Plant on the date Quaker terminated his employment.

Plaintiff himself confirmed that the essential functions of his Site Engineer position included certain physically demanding tasks, which Plaintiff's doctors specified he could no longer perform. While receiving treatment for his 2012 injury at Accelerated Rehabilitation, Plaintiff—who testified that he was honest with his therapists regarding the physical demands of his Site Engineer job—affirmed that his job required:

10

- Lifting up to 50 pounds from floor to waist [SMF 60];

- Lifting up to 50 pounds over his head, including the lifting of 5-gallon buckets of chemicals [SMF 60];

- Exerting pulling forces of 75 pounds [SMF 60];

- Moving liquids with the use of "fairly heavy" two-to-three inch hoses [SMF 61-62];

- Lifting the "fairly heavy" hoses over his head at forces of around 50 pounds [SMF 61-62]; and

- Pushing and pulling the "fairly heavy" hoses to make connections with chemical storage tanks and tanker trucks at forces of around 100 pounds [SMF 64].

Plaintiff's own admission to medical professionals treating his injuries should be dispositive of this "essential functions" inquiry. When determining the essential functions of Plaintiff's position as Site Engineer, this Court must consider "such factors as "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." *Jones v. LaPorte Cty. Sheriff's Dep't*, No. 3:13-CV-1330 JD, 2016 WL 1254367, at *25 (N.D. Ind. Mar. 29, 2016); 29 C.F.R. § 1630.2(n)(3). "[A]n essential function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential. . . . Rather, an essential function must be a fundamental duty of the job." *Basith v. Cook Cty.*, 241 F.3d 919, 929 (7th Cir. 2001).

However, to the extent that Plaintiff's own admissions are not dispositive, every other factor this Court should consider demonstrates that the "essential functions" of Plaintiff's Site Engineer job included physically demanding job tasks. First, Quaker's job description, which Plaintiff agreed was generally accurate, provided that his position was "medium work" and required that Plaintiff "exert[] up to 50 pounds of force occasionally, and/or up to 30 pounds of

11

force frequently, and/or up to 10 pounds of force constantly to move objects." [SMF 31]
Moreover, in arriving at its termination decision, Quaker evaluated Plaintiff's permanent restrictions (as reported by his treating physicians), compared those to what Quaker understood were Plaintiff's primary job responsibilities, and determined that Plaintiff's permanent physical restrictions precluded him from performing his job's essential functions. [SMF 98] This determination by Quaker as to the position's essential functions—which comports with the initial job description provided to Plaintiff when he was hired—deserves deference. *See Jones*, 2016 WL 1254367, at \*25 ("[C]ourts [] give deference to an employer's judgment regarding which requirements of a particular job are 'essential'."). Finally, Plaintiff confirmed that his work experiences from 2008 through 2012 were consistent with both Quaker's job description and the Company's understanding of his essential duties, as his job was essentially a "one-man show" with a "medium-heavy physical demand level" in which he had to "occasionally lift 50 pounds" and exert "pulling forces of 75 hfp." [SMF 36, 42] Plaintiff's physically demanding tasks included regular instances in which he would scale ladders to check levels in the Plant's rolling oil tanks,, as well as filling large, four-foot tall plastic totes with a "fairly heavy" two-to-three inch charged hose by lifting it over his head. [SMF 43-44, 47-49]

Moreover, "[t]he determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision." *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998). At the time Quaker terminated Plaintiff, it was abundantly clear that he could not perform certain physically demanding tasks, which were essential functions of his Site Engineer position. Indeed, Plaintiff admitted that he remained out of work from October 2012 through August 2013 because of his injuries. [SMF 75, 80]

In short, the "essential functions" of Plaintiff's Site Engineer position—as articulated by Quaker and confirmed by Plaintiff's on-the-job experiences—required that he engage in

12

physically demanding tasks, including overhead work and pushing, pulling and lifting heavy objects, on a regular basis. Plaintiff's physicians, however, placed permanent physical restrictions on Plaintiff, which stated he could no longer perform those essential functions of his job.[2] Consequently, Plaintiff was not a "qualified individual" under the ADA. *See Weiler*, 101 F.3d at 524 (affirming grant of summary judgment on ADA claim when the "undisputed facts establish that [plaintiff] is unable to perform the essential functions of her position"); *Dyke v. O'Neal Steel, Inc.*, 327 F.3d 628, 634 (7th Cir. 2003) (affirming grant of summary judgment on ADA claim when plaintiff "has presented no evidence to show he would have been able to pass [the employer's] vision test" and, as a result, plaintiff "cannot show he was able to perform the essential functions of the [] position").

> iii.  Quaker Could Not Reasonably Accommodate Plaintiff's Permanent Work Restrictions Because Plaintiff Never Sought to Engage in the Interactive Process.

Finally, Quaker could not reasonably accommodate Plaintiff's permanent medical restrictions, as articulated by his treating physician. *See* 42 U.S.C. § 12111(8); *England v. ENBI Indiana, Inc.*, 102 F. Supp. 2d 1002, 1012 (S.D. Ind. 2000) (plaintiff "was not a qualified individual with a disability and was not subject to the ADA's protections" when "the possibility that a reasonable accommodation would have allowed her to continue working as a press operator is foreclosed").

At the outset, "[t]he ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 633 (7th Cir. 1998). "[T]he interactive process is triggered upon **the employee's notification** to the employer of their condition." *Mobley*, 531 F.3d at 546 (emphasis added).

---

[2]    Plaintiff never had permanent work restrictions at any time before June 2013. [SMF 18-23] And, even if Plaintiff did have such permanent work restrictions, it is certain that Quaker lacked knowledge of those restrictions because Plaintiff never alerted Quaker to them. [SMF 23]

13

However, it is undisputed that Plaintiff never contacted Quaker to begin the interactive process once he was cleared to return to work in June 2013 with certain restrictions. [SMF 83-89] Plaintiff unequivocally stated that, once his doctor released him to return to work, he did not call or email anyone from Quaker, or otherwise request any accommodation from his employer. [SMF 87-89] Instead, Plaintiff remained out on leave, content to collect his full salary from Quaker, as he had done since October 2012. [SMF 80]

Moreover, prior to Plaintiff taking leave in October 2012 for surgery, Quaker understood that Plaintiff had no work restrictions. [SMF 71-74] Quaker confirmed this understanding by sending Plaintiff an e-mail on August 28, 2012—more than four months after his purported slip-and-fall incident—which stated, "It is our understanding that there are currently no work restrictions resulting from this injury. Therefore you are expected to provide Quaker with a full week of work (40 hours) and complete your testing as required." [SMF 71] Despite having the opportunity to correct any misunderstanding Quaker had at that time regarding Plaintiff's physical capabilities, Plaintiff never responded to that August 28th email, thoroughly deflating his argument that – somehow – Quaker should have been aware of any previously unannounced (and undiagnosed) permanent restrictions. [SMF 72-73]

Moreover, the accommodation Plaintiff seeks—that Quaker just "give me my job back and let the temporary individual go"—is an unreasonable accommodation request. [SMF 90] As noted by Plaintiff, he worked at the Plant "by myself," "was a one-man show" and acted as "the only guy in town at the facility." [SMF 35-37] Further, Plaintiff's physician has set limitations which conclusively establish that he cannot do the job. In essence, Plaintiff contends that Quaker should reinstate Plaintiff and eliminate the essential job functions he cannot perform based on his permanent work restrictions (in this case, overhead work and any pushing, pulling or lifting of more than 30 pounds), or somehow have his colleagues or superiors handle the

14

physically arduous tasks of his position (notwithstanding the fact that he was a "one man show"). However, "asking an employer to eliminate an essential job function so that the employee can perform the remaining essential job functions is not a request for a reasonable accommodation." *Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1113 (S.D. Ill. 2001); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir. 1996) ("[R]easonable accommodation does not encompass reallocation of essential job functions."). Similarly, Quaker was under no obligation to bring Plaintiff back to work while still retaining the individual brought on to cover for Plaintiff during his 10-month absence. To the extent Plaintiff contends that a second employee could be tasked with assisting him with any overhead work, or any pushing, pulling or lifting of more than 30 pounds, Plaintiff is suggesting an accommodation that falls far afield of the requirements of the ADA. Staffing two people on a job that was a "one-man show" is not a reasonable accommodation request. *See Williams*, 190 F. Supp. 2d at 1113 ("Nor was [employer] required to assign [plaintiff] a permanent 'lifting helper' so that [plaintiff] could lift the heavy items in the warehouse" when his work restrictions precluded him from lifting more than 25 pounds.).

Finally, Quaker attempted to reassign Plaintiff to an open position within the Company, but Quaker had no open positions for which Plaintiff was qualified. "Under the ADA, the employer's duty to reasonably accommodate a disabled employee includes reassignment to a vacant position for which she is qualified." *England*, 102 F. Supp. 2d at 1014. As Quaker noted in August 7, 2012 letter to Plaintiff, the Company "reviewed other Quaker job openings" but was "not [] able to identify any current openings in which we can accommodate these permanent restrictions, or for which you are qualified." [SMF 95] Thus, Quaker affirmatively made efforts to accommodate Plaintiff, notwithstanding Plaintiff's total failure to contact the Company and engage in the interactive process (either before or after his receipt of the August 2013 letter).

15

It is not Quaker's burden to prove that it could not reassign Plaintiff to an open position. "[P]laintiff bears the burden of demonstrating that a vacant position exists and that []he is qualified for that position." *England*, 102 F. Supp. 2d at 1014.  However, in the present case, Plaintiff made no effort to identify any such open position.  Quaker's August 7th letter requested that Plaintiff contact the Company "immediately" if he "believe[d] there are other alternatives we have not considered," including an open position with Quaker for which Plaintiff believed he was qualified.  [SMF 96]  Instead, Plaintiff simply contacted human resources six days later to discuss his pension and accrued vacation payout.  [SMF 103-104]  None of his discussions with Quaker concerned other potentially available positions with Quaker or returning to work at the Plant.  [SMF 103-104]  Thus, "[w]ithout a showing that [the employer] had a position available to which [plaintiff] could have been transferred," this Court "must conclude that there were no vacant positions to which [the employer] could have transferred [plaintiff] that would have made her a 'qualified individual with a disability'." *England*, 102 F. Supp. 2d at 1014-15.[3]

**B.      Plaintiff's Age Discrimination Claim Fails as a Matter of Law.**

i.      Plaintiff Failed to Adequately Plead an Age Discrimination Claim.

At the outset, Plaintiff's age discrimination claim fails because Title VII does not apply to age discrimination claims.  Plaintiff alleges that Quaker discriminated against him "on account of age, a violation of Title VII of the Civil Rights Act . . ."  However, it is well-settled that "Title VII quite simply does not cover age discrimination" and as a result, "there is no claim for age discrimination under Title VII." *Lawson v. Diehl Machines, Inc.*, No. 3:98-CV-194RP, 1999

---

[3]      Moreover, to the extent Plaintiff contends that Quaker should have provided additional leave to recover from his injury, this contention is erroneous.  "The ADA does not require an employer to accommodate an employee . . .  by allowing him an indefinite leave of absence." *Nowak*, 142 F.3d at 1004.  Quaker had already provided Plaintiff with more than 10 months' leave to recover from his surgery and undertake rehabilitation, which was *in addition to* the six months Quaker readily permitted Plaintiff to leave work three times per week from April 2012 through October 2012 to receive physical therapy (and, during which time, Plaintiff's superiors

16

WL 325064, at *1 n.1 (N.D. Ind. Apr. 16, 1999).  When determining whether a genuine issue of

material fact exists, this Court must examine, among other things, the "pleadings . . . on file."

Fed R. Civ. P. 56(c).  Plaintiff has plainly failed to plead (much less prove) a viable age

discrimination claim, as age is a not a "protected class" under Title VII.

> ii.    Plaintiff Lacks Any Direct Evidence of Age Discrimination.

Should this Court excuse Plaintiff's deficient pleading and indulge Plaintiff's age

discrimination allegations under the Age Discrimination in Employment Act of 1967 ("ADEA"),

this Court will nonetheless find that Plaintiff's age discrimination claim fails as a matter of law.

"To survive a summary judgment motion on age [] discrimination claims under the ADEA . . . a

plaintiff must present either direct or indirect evidence of discriminatory intent."  *Naik v.*

*Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599 (7th Cir. 2010).  Direct evidence is

evidence that "if believed by the trier of fact, will prove the particular fact in question without

reliance on inference or presumption . . . [and] can be interpreted as an acknowledgment of a

defendant employer's discriminatory intent."  *Pitasi v. Gartner Grp., Inc.*, 184 F.3d 709, 714

(7th Cir. 1999).  The relevant direct evidence necessary to survive summary judgment "must not

only speak directly to the issue of discriminatory intent, it must also relate to the specific

employment decision in question."  *Id.*

The direct evidence available in this case confirms that Plaintiff did not discriminate

against Plaintiff on the basis of his age.  Indeed, Quaker initially hired Plaintiff to work for the

company in 2003 as a Technical Service Specialist, when Plaintiff was 54-years old.  [SMF 6]

Quaker paid Plaintiff an annual salary of over $42,000.  [SMF 6]  Then, in 2008 when Plaintiff

was 59-years old, it *promoted* him to Site Engineer, a position which resulted in Plaintiff

"expanding my horizons" and increasing his annual salary to more than $51,000.  [SMF 8, 25].

---

covered his job tasks).  [SMF 56-58]

"[D]irect evidence . . . must essentially amount to an admission by the decision-maker that his actions were based upon the prohibited animus." *Jenkins v. Lifetime Hoan Corp.*, 259 F. App'x 863, 866 (7th Cir. 2008). However, Quaker's hiring of Plaintiff at age 54 and promotion of him at age 59 confirm that Quaker did not act with age-related animus.

Furthermore, although Plaintiff alleged that he trained a younger employee that Quaker then hired for his position after it terminated him, *see* Dkt. No. 3, Compl., p. 3, the record directly contradicts this allegation. Plaintiff testified at his deposition that, at some undetermined point in time, he trained an individual named "Mr. Feree," who, while Plaintiff still worked at Quaker, was hired by the Company to work at Indiana Harbor East, which is a nearby but distinct facility. [SMF 40-41] Thus, the individual Plaintiff claims to have "trained" to replace him was actually hired *before* Plaintiff took medical leave in October 2012, and was assigned to another open position (not Plaintiff's position) in a separate facility.

Moreover, to cover Plaintiff's job tasks while he was on leave between October 2012 and August 2013, Quaker contracted with a temp agency, which placed Stephen Scott in Plaintiff's position. [SMF 81] Plaintiff admitted, however, that he never trained Scott and only met him once for 10 minutes. [SMF 82] Scott was not hired on a permanent basis until months after Plaintiff was terminated from his position, affording Plaintiff every opportunity to return to work, should his medical circumstances permit him to do so. [SMF 80, 83-85] Thus, the individual who did replace Plaintiff on a *temporary* (not permanent) basis was someone Plaintiff admitted he never worked with at any point in time. [SMF 81-82] This further contradicts Plaintiff's theory that Quaker discriminated against him on the basis of his age.

        iii.     Plaintiff Lacks Any Indirect Evidence of Age Discrimination.

Because no evidence of direct discriminatory intent exists, Plaintiff can only survive summary judgment by presenting indirect evidence of discriminatory intent and "establishing a

18

*prima facie* case under the familiar *McDonnell Douglas* formula," which requires that Plaintiff

show that "(1) he is a member of the protected class; (2) he was performing well enough to meet

his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4)

similarly situated employees not in his protected class were treated more favorably." *Naik*, 627

F.3d at 599-600.  Moreover, Plaintiff must further demonstrate that "age was the 'but-for' cause

of the challenged adverse employment action." *Smith v. Wilson*, 705 F.3d 674, 680 (7th Cir.

2013) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)).  Plaintiff cannot make

the required *prima facie* showing here to survive summary judgment.

> a.   *Plaintiff Failed to Meet Quaker's Legitimate Employment Expectations.*

Quaker does not dispute that Plaintiff is part of a "protected class" under the ADEA, nor

does Quaker dispute that Plaintiff's termination constituted an "adverse employment action."

Nonetheless, Plaintiff's age discrimination claim fails because Plaintiff, at the time of his

termination, was unable to meet Quaker's legitimate employment expectations.  Plaintiff "is out

of luck if he can't show that he was meeting his employer's legitimate expectations." *Peele v.*

*Country Mut. Ins. Co.,* 288 F.3d 319, 328 (7th Cir. 2002).  It is undisputed that Plaintiff is "out of

luck" here because Plaintiff was performing his job inadequately prior to going out on leave in

October 2012.

Following Plaintiff's injury, ArcelorMittal complained to Quaker about Plaintiff's work

performance, which resulted in a meeting between the Plant's Cold Mill Manager and Quaker.

[SMF 65-66]  In response to ArcelorMittal's complaints, Quaker's management and human

resources department met with Plaintiff on August 27, 2012 and expressed the Company's

concerns regarding Plaintiff's inadequate performance.  [SMF 68]  In particular, during that

August 27th meeting, Quaker noted that there had arisen "some recent issues over the past few

months regarding the test parameter data not being supplied."  [SMF 65]  It is telling here that

19

ArcelorMittal (not Quaker) first raised these complaints—this is unquestionably not an instance in which inadequate job performance is pretext.  Indeed, Plaintiff understood that Quaker convened the August 27th call to discuss his job performance because "somebody at ArcelorMittal says they need their tests."  [SMF 69]

Given that the most recent evaluation of Plaintiff's job performance indicated that he was performing well below his employer's legitimate expectations and was unable to complete his required job tasks, he cannot recover under the ADEA.  *See Mobley,* 531 F.3d at 548 (granting summary judgment for employer on age discrimination claim and finding that plaintiff "failed to offer any evidence . . . that she was meeting [defendant's] employment expectations when she was terminated because "[i]t is undisputed that performing at a 'meets' level is a requirement for [plaintiff's] position" and plaintiff "never in fact raised her performance to a 'meets' level").[4]

> **b.  Quaker Did Not Treat Similarly Situated, Under-40 Employees More Favorably Than Plaintiff.**

Moreover, it is undisputed that Quaker did not treat similarly situated employees younger than age 40 more favorably than Plaintiff.  To prove a *prima facie* case of age discrimination, Plaintiff must "show that similarly situated employees outside of the protected class were treated more favorably." *Langreder v. Freeman Expositions, Inc*., No. 13-CV-0371, 2016 WL 537953, at *5 (N.D. Ill. Feb. 11, 2016).  Plaintiff falls far short of meeting this burden.

---

[4]    Furthermore, Plaintiff's permanent work restrictions, which stated that Plaintiff could not lift, push, or pull more than 30 pounds occasionally or frequently or perform any "overhead work," [SMF 76] precluded him from performing the essential functions of his Site Engineer position and rendered him physically unable to meet Quaker's legitimate employment expectations.  *See Barket v. NextiraOne, LLC*., No. CIV. 01-278ADM/AJB, 2002 WL 1457631, at *5 (D. Minn. July 3, 2002), *aff'd sub nom. Barket v. Nextira One*, 72 F. App'x 508 (8th Cir. 2003) (granting summary judgment on ADEA claim because "Plaintiff admits that from the time of his accident, up until his termination . . . he was unable to perform the essential functions of the Tech. III position"); *Jones v. Maryland Nat'l Capital Park & Planning Comm'n*, No. 8:04-CV-01818-AW, 2005 WL 5870422, at *2, *7 (D. Md. Oct. 31, 2005) (granting summary judgment on ADEA claim because plaintiff's "back and occupational problems prohibited him from performing his job" and, as a result, plaintiff "cannot prove that he was performing at a

20

First, it is telling that Plaintiff cannot identify a single comparator for this Court to even consider. "[W]ithout similarly situated comparators, no inference of discrimination arises and [Plaintiff's] disparate treatment claims fail under the indirect method." *Chaib v. Indiana,* 744 F.3d 974, 984 (7th Cir. 2014). Plaintiff's failure to identify even a single comparable employee is fatal to his age discrimination claim.[5]

Indeed, the record indicates that Quaker did not terminate Plaintiff and then replace him with a substantially younger employee, as alleged in the Complaint. Instead, Quaker utilized a temporary employee from a staffing agency to handle Plaintiff's job duties for the more than 10 months he remained out of work following his medical procedure, during which time Quaker continued to pay Plaintiff his full salary. [SMF 80] In fact, the only reason Quaker hired a temporary employee was to accommodate Plaintiff's decision to have neck surgery, and Quaker held Plaintiff's position open while he recovered and rehabilitated. [SMF 81] Quaker did not seek to hire *anyone* for the Site Engineer position on a permanent basis until after Plaintiff's physicians deemed his work restrictions permanent, and it became apparent that Plaintiff was no longer able to perform the essential functions of his job. [SMF 80-81] Quaker's hiring of a temporary employee to cover for Plaintiff while he was out on medical leave does not suggest that Quaker treated other younger, similarly situated employees move favorably—it demonstrates that Quaker made every effort to accommodate Plaintiff and to facilitate his return to work.

---

level that met his employer's legitimate expectations at the time of his termination').

[5]    It is likewise telling that Plaintiff cannot point to a single statement in the record in which Quaker or anyone associated with the Company made any age-related remarks to Plaintiff during his employment. Instead, the record reflects that Plaintiff's termination was *not* motivated by age, but by the fact that his job performance declined before he went out on leave and he became unable to perform the job's essential functions once the doctor issued his permanent work restrictions.

Moreover, the one employee Quaker hired for a similar position at a nearby facility (Mr. Feree) was hired and trained by Plaintiff while Plaintiff still worked for Quaker.  [SMF 40-41] Thus, the employee whom Plaintiff claims to have trained as his replacement was instead hired for an entirely different position *before* Plaintiff went out on leave.  This evidence does not support the disparate treatment that Plaintiff must demonstrate to satisfy his legal burden.  *See Pitasi*, 184 F.3d at 717 (affirming grant of summary judgment for employer when plaintiff's alleged younger replacement "was hired in October 1995 to fill a vacancy that had existed . . . for several months . . . [and] his starting date was unrelated to [plaintiff's] termination").

To survive summary judgment on an age discrimination claim, Plaintiff "must point directly to a discriminatory reason for the employer's action and be directly related to the employment decision."  *Teruggi v. CIT Group/Capital Finance, Inc.,* 709 F.3d 654, 660 (7th Cir 2013).  Plaintiff cannot do so here, as age bias played no role in Quaker's decision to dismiss Plaintiff.  Accordingly, Plaintiff's age discrimination claims must be dismissed.

**C.      Plaintiff's Constitutional Tort Claim Fails as a Matter of Law.**

Plaintiff's constitutional claim does not merit serious inquiry and should be dismissed outright.  Plaintiff alleges that Quaker violated the "Fifth and Fourteenth Amendment due process and equal protection guarantees of the Constitution of the United States" and that he is purportedly entitled to equitable relief and money damages under "42 U.S.C. § 1983."  *See* Dkt. No. 3, Compl., at p. 3.  However, it is black-letter law that, to state a viable claim under Section 1983, Plaintiff must plead and prove (i) the "presence of state action" because "rights secured by the Constitution are protected only against infringement by governments," and (ii) "that the alleged deprivation was caused by a person acting 'under color' of law."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 946 (1982).

22

Plaintiff's Complaint contains no allegations that Quaker engaged in state action, or that any Quaker employee acted "under the color of law." *See generally* Dkt. No. 3, Compl., at pp. 1-4. Moreover, there is no record evidence which establishes either of these fundamental requirements for a Section 1983 claim. [SMF 1-116] Consequently, Plaintiff's constitutional tort claim fails as a matter of law. *See Ridlen v. Four Cty. Counseling Ctr.,* 809 F. Supp. 1343, 1358 (N.D. Ind. 1992) (granting summary judgment on Section 1983 claim for lack of state action because "there has always been some requirement for state action with reference to claims presented in a United States district court under § 1983"); *Hawkins v. Nat'l Collegiate Athletic Ass'n*, 652 F. Supp. 602, 606 (C.D. Ill. 1987) (granting summary judgment for defendant on Section 1983 claims because "Due Process and Equal Protection claims . . . require a primary finding that the actions complained of constituted state action. Where the court find[s] that no such state action existed, both the due process and equal protection claims must fall.").

## V.    CONCLUSION

"Federal courts do not sit as super-personnel departments . . . . [W]hen an employer articulates a plausible, legal reason for discharging the plaintiff, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Anderson v. Jewel Food Stores, Inc.*, 837 F. Supp. 2d 826, 833 (N.D. Ill. 2011). Quaker terminated Plaintiff because the permanent work restrictions articulated by his treating physician precluded him from performing the job's essential physical tasks, and there was no plausible way for Quaker to reasonably accommodate the work restrictions that conflicted with Plaintiff's own assessment of his job responsibilities. Therefore, Quaker respectfully requests that this Court grant summary judgment in its favor and dismiss all of Plaintiff's claims with prejudice.

23

Dated:  April 22, 2016                        **BURKE COSTANZA & CARBERRY LLP**

                                              /s/ Terence M. Austgen
                                              Terence M. Austgen (#2484-49)
                                              Elizabeth M. Bezak (#16648-64)
                                              9191 Broadway
                                              Merrillville, IN 46410
                                              (219) 769-1313


                                              **FOX ROTHSCHILD LLP**

                                              /s/ David J. Garraux
                                              David J. Garraux (PA #204350)
                                              BNY Mellon Center
                                              500 Grant Street
                                              Pittsburgh, PA 15219
                                              (412) 394-6585

                                              *Counsel for Defendant Quaker Chemical*
                                              *Corporation*

24

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 22, 2016, service of a true and complete copy of the foregoing *Brief of Defendant Quaker Chemical Corporation in Support of its Motion for Summary Judgment* was made upon the following counsel of record through the Court's electronic filing system and by depositing same in the United States Mail in an envelope properly addressed to him and with sufficient first-class postage affixed:

Ronald F. Layer, Esquire
Law Office of Ronald F. Layer, P.C.
3235 45th Street, Suite 304
Highland, IN 46322
rfl@layerlaw.com

*Counsel for Plaintiff Thomas Dobosz*

/s/ David J Garraux
David J. Garraux

Dated: April 22, 2016

25