# EXHIBIT "10"

## Florence Larcamp - Physical demand analysis

| | |
|---|---|
| **From:** | Florence Larcamp |
| **To:** | Zychowicz, Joleen |
| **Date:** | 5/10/2013 9:55 AM |
| **Subject:** | Physical demand analysis |
| **Attachments:** | Physical Demands Analysis Form Tom Tobosz 110713.doc; FERROCOTE EGL 1 MSDS.pdf |

Hi Joleen

Attached is the Physical Demands analysis that we sent over to Liberty Mutual last September. Will this work? It's a little more comprehensive than the form you sent over.

Let me know.
Florence

file://D:\Profiles\larcampf\AppData\Local\Temp\XPgrpwise\518CC418$$$$$$100124242    5/10/2013

DEFS000251

**Physical Demands Analysis**
**Accompanied by Job Description**

## PART I    CONTACT INFORMATION

| | | | |
|---|---|---|---|
| Associate Name | Tom Dobosz | Job title | Site Engineer I |
| Job Location | ArcelorMittal Indiana Harbor West, Hammond, Indiana | Loc. Phone | 219-399-1880 |
| Supervisor's Name | Craig Hladik | Supvr. Phone | 724-255-0990 |
| Assessment Made by | Craig Hladik | Assessment Date | 9/6/12 |
| Job Title | Regional Business Manager | Phone | 724-255-0990 |
| HR Contact | Michelle Carter | Phone | 513-424-3124 |

## PART II    JOB DUTIES

Briefly describe job duties <u>or</u> provide a copy of the description

Testing of Tandem Mill solution parameters (Mon-Fri), twice/day.  Manage system inventories, controls and temperatures.  Develop data for process support and monthly reporting.  Provide technical training to AM staff as needed.  Pull weekly hydraulic fluid samples and send for testing at various locations around the plant.  Help schedule and unload Quaker products (tanker trucks) at various locations within the mill.

☐ Job Description Attached

## Instructions for Parts III, IV and V:

Check the boxes that describe the physical requirements of this associate.  <u>Use the "Comments" section at the end of the document to supply additional information</u> or clarification if needed; such as the duration or frequency of an activity. Frequency/duration assumes the average male to be 70"/166 lbs. and the average female to be 64"/137 lbs.

## PART III

**A    Physical Activity**

x    1    Climbing. Ascending or descending ladders, stairs, scaffolding, ramps, poles and the like, using feet and legs and/or hands and arms. Body agility is emphasized. This factor is important if the amount and kind of climbing required exceeds that required for ordinary locomotion.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | | | x | | | | |

x    2    Balancing. Maintaining body equilibrium to prevent falling and walking, standing or crouching on narrow, slippery, or erratically moving surfaces. This factor is important if the amount of balancing exceeds that needed for ordinary locomotion and maintenance of body equilibrium.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | | | x | | | | |

DEFS000252

x     3     Stooping. Bending body downward and forward by bending spine at the waist. This factor is important if it occurs to a considerable degree and requires full motion of the lower extremities and back muscles.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | | | x | | | | |

x     4     Kneeling. Bending legs at knee to come to a rest on knee or knees.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | x | | | | | | |

x     5     Crouching. Bending the body downward and forward by bending leg and spine.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | x | | | | | | |

x     6     Crawling. Moving about on hands and knees or hands and feet.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | x | | | | | | |

x     7     Reaching. Extending hand(s) and arm(s) in any direction.

*CC  Waist to Shoulder*
*DD  Shoulder to Overhead*

*Indicate % of day each activity is performed*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | | | | x | | | |

x     8     Standing. Particularly for sustained periods of time.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | | | | x | | | |

x     9     Walking. Moving about on foot to accomplish tasks, particularly for long distances or moving from one work site to another.

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | | | | x | | | |

DEFS000253

x    10    Pushing. Using upper extremities to press against something with steady force in order to thrust forward, downward or outward.

| Indicate number of timer per day | | |
|---|---|---|
| | Number repetitions per shift | Max distance |
| 0 - 5 lbs | 16 | 2 Feet |
| 6 - 14 lbs | 6 | 3 Feet |
| 15 - 30 lbs | | |
| 31 - 45 lbs | 2 | 3 Feet |
| 46 - 60 lbs | | |
| 61 + lbs | | |

x    11    Pulling. Using upper extremities to exert force in order to draw, haul or tug objects in a sustained motion.

| Indicate number of timer per day | | |
|---|---|---|
| | Number repetitions per shift | Max distance |
| 0 - 5 lbs | 16 | 2 Feet |
| 6 - 14 lbs | 6 | 3 Feet |
| 15 - 30 lbs | | |
| 31 - 45 lbs | 2 | 3 Feet |
| 46 - 60 lbs | | |
| 61 + lbs | .5 | 60 Feet |

x    12    Lifting. Raising objects from a lower to a higher position or moving objects horizontally from position-to-position. This factor is important if it occurs to a considerable degree and requires substantial use of upper extremities and back muscles.

| Indicate number of timer per day | |
|---|---|
| | Number repetitions per shift |
| 0 - 5 lbs | |
| 6 - 14 lbs | |
| 15 - 30 lbs | |
| 31 - 45 lbs | |
| 46 - 60 lbs | 2 |
| 61 + lbs | |

x    13    Fingering. Picking, pinching, typing or otherwise working, primarily with fingers rather than with the whole hand as in handling.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | | | | x | | | |

x    14    Grasping. Applying pressure to an object with the fingers and palm.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | | | | x | | | |

x    15    Feeling. Perceiving attributes of objects, such as size, shape, temperature or texture by touching with skin, particularly that of fingertips.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
| | | | x | | | | |

x    16    Talking. Expressing or exchanging ideas by means of the spoken word. Those activities in which they must convey detailed or important spoken instructions to other workers accurately, loudly, or quickly.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
|  |  |  |  | x |  |  |  |

x    17    Hearing. Perceiving the nature of sounds at normal speaking levels with or without correction. Ability to receive detailed information through oral communication, and to make the discriminations in sound.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
|  |  |  |  | x |  |  |  |

x    18    Repetitive motion. Substantial movements (motions) of the wrists, hands, and/or fingers.
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
|  |  |  | x |  |  |  |  |

x    19    Carrying: Carrying objects that may be of considerable weight and/or over distances. The exertion level required is more than what is required to carry routine workplace objects.  Examples: Sample pails
*Indicate % of day each activity is performed*
*Frequency or Duration of Activity*

| Never | Little 5% | Infrequently 10% | Occasionally 20% | Regularly 30% | Frequently 40% | Continuous 60% | Sustained/ Continuous 80% |
|---|---|---|---|---|---|---|---|
|  |  |  |  | x |  |  |  |

**B    Physical Requirements ( Check only ONE box)**

☐    1    Sedentary work. Exerting up to 10 pounds of force occasionally and/or negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work Involves sitting most of the time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

☐    2    Light work. Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. If the use of arm and/or leg controls requires exertion of forces greater than that for sedentary work and the worker sits most of the time, the job is rated for light work.

x    3    Medium work. Exerting up to 50 pounds of force occasionally, and/or up to 30 pounds of force frequently, and/or up to 10 pounds of force constantly to move objects.

☐    4    Heavy work. Exerting up to 100 pounds of force occasionally, and/or up to 50 pounds of force frequently, and/or up to 20 pounds of force constantly to move objects.

☐    5    Very heavy work. Exerting in excess of 100 pounds of force occasionally, and/or in excess of 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects.

**C    Visual Acuity (Please check only one block)**

*Note: The visual acuity requirements including color, depth perception, and field vision.*

☐    1    The worker is required to have close visual acuity to perform an activity such as: preparing and analyzing data and figures; transcribing; viewing a computer terminal; extensive reading; visual inspection involving small defects, small parts, and/or operation of machines (including inspection); using measurement devices; and/or assembly or fabrication parts at distances close to the eyes.

x    2    The worker is required to have visual acuity to perform an activity such as: operates machines, such as lathes, drill presses, power saws, and mills where the seeing job is at or within arm's reach; performs mechanical or skilled trades tasks of a non-repetitive nature, such as carpenter, technicians, service people, plumbers, painters, mechanics, etc.

☐    3    The worker is required to have visual acuity to determine the accuracy, neatness, and thoroughness of the work assigned (i.e., custodial, food services, general laborer, etc.) or to make general observations of facilities or structures (i.e., security guard, inspection, etc.)

Physical Demands Analysis Form Tom Tobosz 110713_2.doc prepared for:

*Associate Name  and Date prepared*                                      *Page 4 of 6*

DEFS000255

## Part IV

**A** CONDITIONS (Please check all blocks that apply)

X   1   The worker is subject to environmental conditions. Protection from weather conditions but not necessarily from temperature changes.

X   2   The worker is subject to outside environmental conditions. No effective protection from the weather.

X   3   The worker is subject to both environmental conditions. Activities occur inside and outside.

X   4   The worker is subject to extreme cold. Temperatures typically below 32° for periods of more than one hour. Consideration should be given to the effect of other environmental conditions, such as wind and humidity.

X   5   The worker is subject to extreme heat. Temperatures above 100° for periods of more than one hour. Consideration should be given to the effect of other environmental conditions, such as wind and humidity.

X   6   The worker is subject to noise. There is sufficient noise to cause the worker to shout in order to be heard above ambient noise level.

X   7   The worker is subject to vibration. Exposure to oscillating movements of the extremities or whole body.

X   8   The worker is subject to hazards. Includes a variety of physical conditions, such as proximity to moving mechanical parts, moving vehicles, electrical current, working on scaffolding and high places, exposure to high heat or exposure to chemicals.

X   9   The worker is subject to atmospheric conditions. One or more of the following conditions that affect the respiratory system of the skin: fumes, odors, dust, mists, gases, or poor ventilation.

X   10  The worker is frequently in close quarters, crawl spaces, shafts, manholes, small-enclosed rooms, and other areas that could cause claustrophobia.

x   11  The worker is required to move through or work in narrow aisles or passageways.

**B   CHEMICAL EXPOSURES**

☐   1   The worker is not substantially exposed to adverse environmental conditions (example: typical office or administrative work environment.)

x   2   The worker is regularly in a manufacturing plant environment where no respiratory protection is required during the worker's regular job tasks.

☐   3   The worker is required to perform tasks that require respiratory protection.

☐   4   This worker participates in Hazardous Response mitigation activities

x   5   Material Data Safety Sheets. List any MDSS that were provided in the Comments box, or attach a separate listing.

## PART V

☐   1   Driving. The worker is <u>required</u> to drive a vehicle or drive an automobile or a motorized industrial truck as a regular part of their duties.

X   2   Personal Protective Equipment: The worker is required to be able to don and wear the required PPE for the task. This may include eyeglasses or face shields, gloves, special clothing, and respirator.

X   3   Worker is required to traverse uneven, slippery or oily floor surfaces

X   4   Worker is required to climb: (circle all that apply)  Fixed industrial stairs, fixed industrial ladders, mobile ladders .

X   3   List any site or position specific issues here:

**Additional Comments:** Ferrocote EGL 1 fumes from unloading bulk to bins every month.  Employee is subject to this exposure each time.  **Product Code 003385BULK (MSDS attached)**

DEFS000256

*Prepared by:*

Supervisor:    _Craig Hladik_____
                         Sign Name                                                    Date  9/7/12

*I have reviewed and agree with this assessment:*

Associate:         _Tom Dobosz_____
                           Sign Name                                                  Date  9/7/12

Human Resources:__    _____
                                    Sign Name                                          Date

SHE Representative:__    _____
                                      Sign Name                                        Date

DEFS000257

# EXHIBIT "11"



August 7, 2013

Thomas Dobosz

█████████████

Re:     Workers Compensation Work Status

Dear Thomas,

Quaker Chemical Corporation makes every attempt to return associates with medical restrictions under workers compensation to work whenever possible. We have received your medical release from your doctor, Nikola Nenadovich, MD dated June 24, 2013. Your release form states you have the following permanent restrictions:

- No lifting/pushing/pulling >30lbs frequently and/or occasionally
- No overhead work.

After reviewing your restrictions we are unable to accommodate you in your current role of Site Engineer I. Additionally we have reviewed other current Quaker job openings and we have not been able to identify any current openings in which we can accommodate these permanent restrictions or for which you are qualified. If you believe there are any other alternatives we have not considered, you should contact me immediately.

Unless there has been a change in your work restrictions or other alternatives which you would like us to consider, your employment with Quaker will be terminated.

**Current Entitlement**

Your 30-day notice of termination begins today, August 7, 2013 (your "notification date"). Unless otherwise notified by me, you will no longer report to work at the Company after your notification date. However, if notified by me, you will be required to make yourself available for providing any transition-related assistance that may be requested of you during your 30-day notice period. Your last day of employment will be September 5, 2013 (your "termination date"), which provides you with at least 30 days' notice of that termination date. The pay and benefits to which you are entitled, or which Quaker will provide, are as follows:

**Quaker Chemical Corporation**

One Quaker Park, 901 Hector Street, Conshohocken, PA 19428-0809 USA www.quakerchem.com

T 610.832.4000  F 610.832.8682



EXHIBIT

Dobosz

21

2/2/16

DEFS000226

# EXHIBIT "12"

STATE OF INDIANA ) ) SS: IN THE LAKE SUPERIOR COURT

COUNTY OF LAKE ) SITTING IN CROWN POINT, INDIANA

THOMAS DOBOSZ )
)
     Plaintiff, )
)
vs. )    Cause No.: 45D10-1504-CT-00064
)
QUAKER CHEMICAL CORPORATION )
)
     Defendant. )

## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Indiana Rules of Civil Procedure, Plaintiff, Thomas Dobosz, hereby requests that the Defendant, Quaker Chemical Corporation, produce for inspection and copying within thirty (30) days at the office of Ronald F. Layer, P.C. 3235 - 45th Street, Suite 304, Highland, Indiana 46322, all of the following documents within the possession, custody or control of the Defendant, Quaker Chemical Corporation, their agents, servants or representatives:

1. Any and all correspondence including emails, notes, letters, etc between Florence Larcamp and Liberty Mutual Insurance regarding the work injury of plaintiff in April, 2012.

2. A copy of the "lodged complaints" referred to in defendant's counsel letter to EEOC dated 12/2/13 page 5 from ArcelorMittal Steel to Quaker regarding plaintiff not performing his duties in 2012.

Respectfully submitted,
RONALD F. LAYER, P.C.
Attorney for Plaintiffs

By: Ronald F. Layer
3235 - 45th Street, Suite 304
Highland, IN 46322
Telephone: (219)924-4511

## AFFIDAVIT OF SERVICE

I affirm, under the penalties for perjury, that on the _____ day of September, 2016, service of a true and complete copy of the above and foregoing pleading and paper was made upon each party or attorney of record herein by depositing the same in the United States Mail in envelopes properly addressed to each of them and with sufficient first class postage affixed:

BY: _____
                 Tricia Dunn



**Fox Rothschild** LLP
ATTORNEYS AT LAW

BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
Tel 412.391.1334 Fax 412.391.6984
www.foxrothschild.com

David J. Garraux
Direct Dial: (412) 394-6585
Email Address: dgarraux@foxrothschild.com

March 7, 2016

**VIA FEDERAL EXPRESS**
**and ELECTRONIC MAIL**

Ronald F. Layer, Esquire
Law Office of Ronald F. Layer, P.C.
3235 45th Street, Suite 304
Highland, IN  46322
rfl@layerlaw.com

Re:    **Thomas Dobosz v. Quaker Chemical Corporation,**
       **N.D. Ind., Cause No. 2-15-CV-203**

Dear Counsel:

We have received your supplemental responses to Quaker Chemical Corporation's most recent set of Interrogatories and Document Requests; thank you for your cooperation. What remains outstanding, however, are responses to the requests reiterated during the depositions taking place on February 2nd and 3rd. Particularly as these requests largely seek materials initially sought in connection with Quaker's initial discovery requests and, in any event, were made more than thirty days ago, your client's immediate response is appreciated. Specifically, we are looking for the following documents and/or information:

- Page 2 from the HUD-1 associated with the sale of Mr. Dobosz's Dyer, Indiana residence;

- Materials from the long term disability carrier confirming that Mr. Dobosz's benefits were scheduled to conclude;

- A comprehensive listing of all physicians and medical professionals visited and/or consulted by Mr. Dobosz from January 2000 through the present; and

A Pennsylvania Limited Liability Partnership

California    Colorado    Connecticut    Delaware    District of Columbia
Florida    Nevada    New Jersey    New York    Pennsylvania    Texas



Fox Rothschild LLP
ATTORNEYS AT LAW

Ronald F. Layer, Esquire
March 7, 2016
Page 2

- All documents in Mr. Dobosz's possession, custody, or control – including non-identical copies of materials already produced and/or otherwise in the record (e.g. documents bearing hand-written notes) – from or to Lakeshore Bone & Joint Institute.

Particularly as nearly all of these materials were initially sought through Quaker's document requests of August 7, 2015, the supplemental responses are, at this point, severely delinquent and require an immediate, comprehensive response by Mr. Dobosz.

Turning to your Second Request for Production of Documents, we note that the Request was postmarked February 26, 2016 (notwithstanding the September 26, 2016 date identified in the Affidavit of Service), only eighteen (18) days in advance of the discovery deadline. As such, the Request is untimely and does not require a response.

As an accommodation, however, Quaker can confirm that it previously provided the file for Mr. Dobosz's Workers' Compensation claim from April 2012. That file included various pieces of email correspondence between Ms. Larcamp and representatives of Liberty Mutual Insurance. Additionally, this confirms that Quaker has not identified any physical, written documentation from ArcelorMittal addressing Mr. Dobosz's 2012 performance deficiencies.

We look forward to Mr. Dobosz's immediate responses to the outstanding requests identified above and trust that judicial intervention will not be required to secure the materials.

Very truly yours,

David J. Garraux

cc:    Terence M. Austgen, Esquire (via email)

ACTIVE 39177693v1

# EXHIBIT "13"

Page 213

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

THOMAS DOBOSZ,)
                  )
       Plaintiff,   )
                  )
       vs.        ) No. 2:15 CV 00203
                  )
QUAKER CHEMICAL     )
CORPORATION,       )
                  )
       Defendant.   )

I, THOMAS DOBOSZ, state that I have read the foregoing transcript of the testimony given by me at my deposition on the 2nd day of February, 2016, and that said transcript constitutes a true and correct record of the testimony given by me at the said deposition except as I have so indicated on the errata sheets provided herein.

                      _____
                          THOMAS DOBOSZ

No corrections (Please initial)
_____
Number of errata sheets submitted
_____ (pgs.)

SUBSCRIBED AND SWORN to
before me this _10_ day
of _March_ _____ 2016.

_____
      NOTARY PUBLIC

RICHARD S MARTIN
Notary Public - State of Florida
My Comm. Expires Apr 2, 2018
Commission # FF 101106
Bonded Through National Notary Assn.

CK Reporting - 312.223.9201

## Legal

| | |
|---|---|
| **From:** | Legal [legal@layerlaw.com] |
| **Sent:** | Tuesday, March 15, 2016 9:18 AM |
| **To:** | 'support@ckreporting.com' |
| **Subject:** | Dobosz v. Quaker Chemical Corp. |
| **Attachments:** | Signature page of Dobosz 2-2-16 dep.pdf |

*Law Office of Ronald F. Layer, P.C.*
*3235 45th Street, Suite 304*
*Highland, IN 46322*
*Phone:  (219) 924-4511*
*Fax:     (219) 838-1909*

## Legal

From:        CK Reporting [support@ckreporting.com]
Sent:        Tuesday, March 15, 2016 9:20 AM
To:          Legal
Subject:     RE: Dobosz v. Quaker Chemical Corp.

Thank you.

*Kelly Halloran*

**CK** Reporting                                          **CK** Reporting
*161 N. Clark Street – Suite  2575*        AND        *833 W. Lincoln Highway – Suite 105E*
*Chicago, Illinois 60601*                                *Schererville, Indiana 46375*
T: 312.223.9201                                            T: 219.205.3390
F: 312.223.9222                                            F: 219.205.3391

support@ckreporting.com

DISCLAIMER: The information contained in this e-mail, and any accompanying documents, may contain information that is confidential or otherwise protected from disclosure. If you are not the intended recipient of this message or if this message has been addressed to you in error, please contact the sender by e-mail at support@ckreporting.com and then delete this message, including any attachments. Any dissemination, distribution or other use of the contents of this message by anyone other than the intended recipient is strictly prohibited.

**From:** Legal [mailto:legal@layerlaw.com]
**Sent:** Tuesday, March 15, 2016 9:18 AM
**To:** CK Reporting
**Subject:** Dobosz v. Quaker Chemical Corp.

*Law Office of Ronald F. Layer, P.C.*
*3235 45th Street, Suite 304*
*Highland, IN 46322*
*Phone:  (219) 924-4511*
*Fax:     (219) 838-1909*

1

# EXHIBIT "14"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

THOMAS DOBOSZ,                          )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     )       CASE NO.: 2:15-CV-00203
                                        )
QUAKER CHEMICAL CORPORATION,            )
                                        )
            Defendant.                  )

## AFFIDAVIT OF BRIAN KING

Comes now your affiant, **Brian King**, and being first duly sworn upon his oath, states as follows:

1.    That I am Brian King and formerly worked at Arcelor Mittal Steel from approximately 2008 until sometime in 2014.

2.    That my position in said company at the time of my departure was Steel Mill Line Planner.

3.    That in my job I became acquainted and dealt with the plaintiff in this cause, Thomas Dobosz, who worked at Arcelor Mittal Steel for Quaker Chemical Corporation during the majority of the time I was there.

4.    That I regularly, if not daily, saw Thomas Dobosz at the mill performing his job for Quaker Chemical, which was to do various things on behalf of Quaker for Arcelor Mittal Steel.

5.    That I am also aware that in early 2012, Thomas Dobosz fell on a stairway in a part of the mill and was injured.

6.      That I am aware that after his injury until the time of his surgery during the Spring and Summer of 2012, he was still able to do his job.

7.      That I never saw him having any difficulties and never heard him complain of not being able to do his job.

8.      That in addition, I never heard anyone from Quaker Chemical, some of whom were his superiors who I would see occasionally, complain about Thomas Dobosz not doing his job during that time, or not being able to do his job, nor did I ever hear anyone from Arcelor Mittal Steel complain that Thomas Dobosz was either not doing or physically unable to do his job.

9.      That Thomas Dobosz never expressed to me any problems in doing his job and never expressed to me any intention on retiring at the end of 2012, or anytime in 2013. I know and as far as I am concerned his fellow workers at that area of the mill both Mittal workers and Quaker people who came there knew that he was planning on coming back to work.

10.     That I became familiar with the work that he did, and I never saw him carrying what looked to be over 50 lbs., or being required to lift over 50 lbs.

11.     That I am also aware that from 2008 when I first started working there until the time Thomas Dobosz was terminated, to the best of my knowledge, his physical job requirements did not change. Mr. Dobosz has told me that he was on some restrictions from an earlier injury, and he was able to do his job during my time at the mill until his injury in 2012, and, as stated above, he was able to do his job the same way without any difference from 2012 until he was terminated.

12.     I knew Thomas Dobosz did not come back to work after his surgery, but I talked to him and he planned on coming back, said he could do his job and told me he so informed the people at Quaker.

2

13.     That I have reviewed a document called Physical Job Assessments, which appear to be a statement of what Mr. Dobosz' physical requirements were at his job, and I must say that in all my years of observing Thomas Dobosz doing his job, many of those things are stated in that document I never saw him do, never heard that he had to do them, and, to the best of my knowledge, he did not have to do those physical requirements to complete the tasks of his job.


**FURTHER AFFIANT SAYETH NOT.**

Brian King

I, **Brian King**, affirm under the penalties of perjury that the representations are true and correct to the best of my knowledge and belief.

Brian King

3

# EXHIBIT "15"

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| THOMAS DOBOSZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    CASE NO.:  2:15-CV-00203 |
| | ) |
| QUAKER CHEMICAL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## AFFIDAVIT OF THOMAS DOBOSZ

Comes now your affiant, **Thomas Dobosz**, and being first duly sworn upon his oath, states as follows:

1.    That I am the plaintiff in this matter.

2.    That I was hired by Quaker Chemical in 2003, and worked there until I was terminated in August of 2013.

3.    That I was injured in 2005 and released from the doctor in 2006. It was determined that I had permanent impairment and was provided a settlement pursuant to Indiana law for that permanent impairment, and I had permanent restrictions with that as well.

4.    Notwithstanding these restrictions, I continued to do my job, I was promoted in 2008 and no job duties changed. No Physical Demand Analysis was done back in 2008.

5.    The permanent restrictions for 2005 did not keep me from doing my job, and I was able to continue doing it with occasional help from co-workers.

6.    That Quaker sent me to a health facility in 2009 for a physical exam and received a report that my attorneys have provided to the Court dated January, 2009, stating my permanent

restrictions at that time. In fact, Quaker never contacted me to review the facilities finding, they just filed the report away and ignored them. I continued to do my job without interruption.

7.    That from 2009, after my promotion in 2008, until 2013 upon my termination, the nature of my job and the physical requirements did not change.

8.    After my injury in April of 2012, while in treatment for my injury, I continued to do my job. Further, I was never placed on any light duty restrictions by Quaker and continued to do my same job, contrary to Quaker's counsel telling EEOC investigator they did so.

9.    It was also later determined that I needed a cervical fusion for my injury, and that was performed in October of 2012, and I was terminated before I was able to get back to work.

10.    It was never my intention to retire in 2012 or even 2013. I expected to have a full recovery and return to work once released by my physician. Retirement was a few more years away.

11.    From various e-mails, I realized that Quaker intended to terminate me in June, 2013. Quaker Human Resource manager, Michelle Carter, told the EEOC investigator it was her and Tim Haines, head of Human Resources, that made this decision solely based on the Physical Demand Analysis that was drafted back in September of 2012. I never saw this report, never signed this report, manually or electronically.

12.    The property purchased in Florida in 2012 was the third piece of property purchased. We purchased two other properties in the early 2000's which we sold, and due to market conditions in 2012, we decided to purchase what is now our permanent residence.

2

13.     That I never saw the physical demand analysis until my deposition. I never signed it, no one ever asked me to sign it, and no one ever asked me for specific input regarding those things, most of which I never had to do.

14.     I never told any medical provider that I did not want to go back to work because I did want to go back to work.

15.     I felt I was physically capable of continuing to do my job, and I told Michelle Carter that and asked for my job back.

16.     That is the only accommodation I needed as far as I was concerned because I had been doing my job for many years with a permanent impairment and restrictions as to lifting weight.

17.     No one from ArcelorMittal Steel ever criticized me in 2012 or 2013 for not doing my job after my injury.

18.     My employer did give me a hard time regarding my therapy visits, however, I did not have an attorney at the time, and I was not able to make them understand because I did not really understand exactly how it worked myself, but that in Indiana, the employer through the insurance company gets to pick the doctor, direct the treatment and set the appointments. You go when they tell you to go as far as I was concerned at the time.

19.     No one from Quaker ever asked me to show them on the site what my job was, what I had to do physically on a daily or regular basis.

20.     I had a disability from lifting certain things, which bothered me for a lot of things I wanted to do, but I was able to do my job and I told Quaker that, and would have probably still been working today had they not considered me disabled and terminated me because they determined I could not do a job they described in the Physical Demand Analysis that again I never signed or ever

3

saw, most of which was not even included in my responsibilities on a daily basis, and it never was the entire time I worked there.

**FURTHER AFFIANT SAYETH NOT.**

Thomas Dobosz

I, **Thomas Dobosz**, affirm under the penalties of perjury that the representations are true and correct to the best of my knowledge and belief.

Thomas Dobosz

4