# EXHIBIT 24

Michelle Carter                    Dobosz vs. Quaker Chemical Corporation

A.  No.

Q.  Okay.  And again, look at the one, two, three, fourth from the bottom.  Again, apparently you and Craig and Florence or Quaker are directing Tom Dobosz to schedule his therapy visits at certain times.  Is that what that basically says?

A.  No, it says we asked him to do that, not that we directed him.

Q.  Okay.  And Florence was in this conversation; do you remember whether or not she said it's not up to him, that the nurse case manager sets all the appointments?

A.  No.

Q.  Okay.  Have you come to find out that that's the way it works in Indiana or not?

A.  No.

Q.  Okay.

            (Carter Exhibit No. 4 marked as
             requested.)

BY MR. LAYER:

Q.  Do you recall sending this E-mail to Tom?

A.  Yes.

Q.  And obviously it indicates that you talked to Florence about it, correct?

A.  Yes.

Michelle Carter                    Dobosz vs. Quaker Chemical Corporation

Q. And what did she tell you about her knowledge or her ability to find out specifically what the restrictions were?

A. She pointed back to this document that she provided me from APAC, sorry.

Q. And that's it?

A. Yes.

Q. And what was your understanding as to whether or not that document had permanent restrictions in it?

A. That nothing in the document says permanent restrictions.

Q. But the document does say he is limited from doing certain things, does it not?

A. That is correct.

Q. No, I mean, No. 3 -- or No. 2, APAC, right?

A. Number 1, yes.

Q. Number 1. Okay. Whatever it was.

A. Yes.

Q. And I guess my question would be with No. 4, is why are you and Florence asking about this when Quaker had knowledge since 2009? Why are you asking this question in 2012?

MR. GARRAUX: Objection to form; assumes facts not in evidence.

You can answer.

Michelle Carter                    Dobosz vs. Quaker Chemical Corporation

BY THE WITNESS:

A.   I was not aware of that piece of documentation.

MR. GARRAUX:  Let the record reflect --

BY MR. LAYER:

Q.   Let me ask you this.

MR. GARRAUX:  We need to discuss what that piece of documentation is, just for the record, so it's clear it's the 2009 --

MR. LAYER:  I'm sorry.  It's the 2009 Health Resources report regarding Tom Dobosz.

BY THE WITNESS:

A.   Okay.

MR. GARRAUX:  Thank you.

BY MR. LAYER:

Q.   Well, if, in fact, it turns out that this was contracted by Quaker --

A.   Uh-huh.

Q.   -- certainly Quaker had it, right, because they -- wouldn't you agree with that because they provided it to me in discovery?

A.   I don't know who would have it at Quaker.

Q.   No, but I wouldn't have it unless Quaker did because I got it from Quaker, that's what I'm saying. Right?

Michelle Carter                    Dobosz vs. Quaker Chemical Corporation

MR. GARRAUX:  Objection to form.

BY MR. LAYER:

Q.  So my question is:  Somebody at Quaker had this, right?

A.  I don't know.

Q.  Have you inquired as to where Quaker got it?

A.  No.

Q.  And have you ever discussed this document with Florence to see if she knew about it?

A.  No.

Q.  Have you ever asked who requested this?

A.  No.

Q.  And what response, if any, did you get from Mr. Dobosz to this E-mail?

A.  No response.

Q.  None whatsoever?

A.  Not that I recall.

Q.  Okay.  In -- Remind me, when did he stop working in 2012?

A.  When he left for surgery in October of 2012.

Q.  Okay.  So in August of 2012, he was working, right?

A.  Correct.

Q.  He was doing his job, right?

A.  Defined as?