# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

THOMAS DOBOSZ,                              )
      Plaintiff,                          )
                                          )
v.                                          )      CAUSE NO.: 2:15-CV-203-PRC
                                          )
QUAKER CHEMICAL CORPORATION,                )
      Defendant.                          )

## OPINION AND ORDER

This matter is before the Court on (1) Defendant Quaker Chemical Corporation's Motion for Summary Judgment [DE 21], filed by Defendant Quaker Chemical Corporation ("Quaker Chemical") on April 22, 2016; (2) Defendant Quaker Chemical Corporation's Motion to Strike the Unsworn Statements of Brian King and Thomas Dobosz [DE 33], filed by Quaker Chemical on June 21, 2016; and (3) Plaintiff's Motion to Substitute Exhibits [DE 34], filed by Plaintiff Thomas Dobosz on June 22, 2016. For the reasons set forth below, the Court grants the Motion for Summary Judgment in favor of Defendant and against Plaintiff on all claims.

## PROCEDURAL BACKGROUND

Plaintiff Thomas Dobosz filed his Complaint in the Lake County, Indiana, Superior Court on April 15, 2015, alleging that Defendant Quaker Chemical, his former employer, discriminated against him based on his disability by refusing to provide a reasonable accommodation and by terminating his employment, discriminated against him based on his age by replacing him with a younger individual he had trained, and violated his due process and equal protection rights guaranteed by the United States Constitution.

Defendant Quaker Chemical removed the action to this Court on May 26, 2015, and filed an Answer on June 25, 2015.

Quaker Chemical filed the instant Motion for Summary Judgment on April 22, 2016. Dobosz filed a response on June 7, 2016, attaching the unsworn Declarations of Brian King and himself. Quaker Chemical filed a reply on June 21, 2016.

The same date, Quaker Chemical filed a Motion to Strike the Unsworn Statements of Brian King and Thomas Dobosz. In lieu of a response brief, Dobosz filed a Motion to Substitute Exhibits on June 22, 2016. In response to the Motion to Substitute and in reply in support of the Motion to Strike, Quaker Chemical filed a brief on June 24, 2016. Dobosz did not file a reply in support of the Motion to Substitute, and the time to do so has passed.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure require that a motion for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could

find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56 (a), (c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Spierer*, 798 F.3d at 507-08; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013).

"Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(c)(1), (e); *see also Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1986)). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the

court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-50.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MOTION TO STRIKE

In support of his response to the Motion for Summary Judgment, Dobosz submitted two declarations—those of himself and Brian King, a former employee of ArcelorMittal Steel.[1] Quaker Chemical asks the Court to strike both because they are undated, unsworn, and not made based on personal knowledge and to strike Dobosz's Declaration for the further reason that it conflicts with his prior deposition testimony.

In federal court, an unsworn declaration must be dated, made in writing, and subscribed by the declarant "as true under penalty of perjury." 28 U.S.C. § 1746. The Seventh Circuit Court of Appeals has stated that, "*so long as the documents comply with 28 U.S.C. § 1746*, and in the interests of justice, a district court should not be unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive

---

[1] Although Dobosz titled both documents as affidavits, by definition an affidavit is "[a] voluntary declaration of facts written down and sworn to by a declarant, usu. before an officer authorized to administer oaths." AFFIDAVIT, Black's Law Dictionary (10th ed. 2014). Because the documents are not sworn, they are declarations.

requirements of execution are satisfied." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (emphasis added); *see also Davis v. Wells Fargo Bank*, 685 F. Supp. 2d 838, 842 (N.D. Ill. 2010) (quoting *Knights v. Williams*, No. 02 C 5017, 2005 WL 1838427, at *3 (N.D. Ill. July 28, 2005)) (internal quotation marks omitted).

Some courts have stricken unsworn and/or undated declarations for failing to comply with § 1746. *See Kalra v. United States*, No. 12-CV-3154, 2013 WL 1749385, at *3 (N.D. Ill. Apr. 23, 2013) (striking the unsworn declaration because it was not dated (citing *Pfeil*, 757 F.2d at 859)); *Mitchel v. Buncich*, No. 2:11-CV-91, 2013 WL 275592, at *4 (N.D. Ind. Jan. 24, 2013); *see also Counts v. Kraton Polymers U.S., LLC*, 260 F. App'x 825, 829 (6th Cir. 2008). However, the absence of a date may be excused when "extrinsic evidence demonstrates the approximate date of signing." *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 244 (D. Md. 2012) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475-76 (6th Cir. 2002) (citing *EEOC v. World's Finest Chocolate, Inc.*, 701 F. Supp. 637, 639 (N.D. Ill. 1988))); *see also Kennedy v. Schneider Elec.*, No. 2:12-CV-122-PRC, 2014 WL 4388147, at *1 (N.D. Ind. Sept., 5, 2014); *Davis*, 685 F. Supp. 2d at 842; *Montgomery v. Ruxton Health Care, IX, LLC*, No. 3:06-CV-24, 2006 WL 3746145, *3 (E.D. Va. Dec. 15, 2006).

In response to Quaker Chemical's Motion to Strike, Dobosz filed a Motion to Substitute, resubmitting the two declarations with the date June 2, 2016, typed on each. Counsel for Dobosz states in the Motion to Substitute that the "dates have been confirmed with the affiants." (Pl. Mot. 1). Because Dobosz's counsel confirmed the dates with Dobosz and King, the Court finds that Dobosz has provided extrinsic evidence to show that the declarations were signed on June 2, 2016, and, thus, denies the Motion to Strike on the basis that the declarations are undated. As a result, the Court denies as moot the Motion to Substitute.

Nevertheless, the Court finds that portions of both declarations are not made based on personal knowledge, as required by Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). In this case, both declarations "affirm under the penalties of perjury that the representations are true and correct *to the best of my knowledge and belief*." (Pl. Resp., Ex. 14, Ex. 15) (emphasis added). "Declaring that a person believes something or knows something to the best of one's knowledge is not equivalent to saying the person has personal knowledge." *Estate of Cape v. United States*, No. 11-C-0357, 2015 WL 5794209, at *2 (E.D. Wis. Oct. 2, 2015) (disregarding statements that were made to "the best of [Walther's] knowledge and belief").

However, personal knowledge can be inferred from the content of a declaration. *See Wine & Canvas Dev., LLC v. Roberts*, No. 1:12-CV-1752, 2013 WL 1099895, at *2 (S.D. Ind. Mar. 15, 2013) (citing *Credentials Plus, LLC v. Calderone*, 230 F. Supp. 2d 890, 904-05 (N.D. Ind. 2002); 11 Moore's Fed. Practice § 56.14[1][c] (Matthew Bender 3d ed. 2002)). Thus, the Court infers that certain of Dobosz's and King's statements are based on personal knowledge because the content of the statements logically flows from personal experience. Accordingly, the Court grants the Motion to Strike only as to the following portions of the declarations for which personal knowledge *cannot* be inferred:

**Dobosz Declaration**

1.  Paragraph 4:  "No Physical Demand Analysis was done back in 2008."

2.  Paragraph 6:  "and received a report" and "they just filed the report away and ignored them"

3.      Paragraph 8:    "contrary to Quaker's counsel telling EEOC investigator they did so"

4.      Paragraphs 11 and 17 in their entirety.

5.      Paragraph 18:   "and I was not able to make them understand . . . concerned at the time"

6.      Paragraph 20:   "and would have probably . . . Physical Demand Analysis that again"

**King Declaration**

1.      Paragraphs 5 and 6 in their entirety

2.      Paragraph 9:    "and as far as I am concerned . . . people who came there knew"

3.      Paragraph 11 first sentence

4.      Paragraph 13: "and, to the best of my knowledge . . . complete the tasks of his job"

Finally, although Quaker Chemical argues generally that Dobosz's Declaration conflicts with his prior deposition testimony, Quaker Chemical has not identified any declaration statements and deposition testimony that conflict. It is not the Court's job to search the record for all such conflicts on a motion to strike. Because Quaker Chemical fails to point to any conflicting statements, the Court denies the motion to strike on this ground. However, the Court will address any conflict that may arise during the course of ruling on the motion.

## MATERIAL FACTS[2]

### 1.      *Dobosz Is Hired by Quaker Chemical*

Quaker Chemical contracted with ArcelorMittal to provide on-site chemical management services at ArcelorMittal's Indiana Harbor West facility in East Chicago, Indiana. Dobosz began

---

[2] In its reply brief, Quaker Chemical argues that Dobosz's "Statement of Genuine Issues of Material Facts" ("Statement of Genuine Issues") does not comply with Local Rule 56-1(b)(2), which provides that the plaintiff, as the non-moving party, is obligated to "identif[y] the material facts that . . . are genuinely disputed so as to make trial necessary." N.D. Ind. L.R. 56-1(b)(2). Although Dobosz's Statement of Genuine Issues does not follow the proper format, Dobosz identifies a material issue of fact in his response brief when he states "that there is a material issue of fact as to whether or not [Dobosz] was able to do his job and whether or not the defendant purposefully overstated the physical job assessment in order to effect the desired termination . . . ." (Pl. Resp. 17). Therefore, Dobosz meets the minimum requirements of the rule.

Quaker Chemical also points out that Dobosz cites only two pieces of supporting evidence in his Statement

working for Quaker Chemical at the ArcelorMittal facility on October 27, 2003, as a Technical Service Specialist I when he was fifty-four years old with an annual salary of over $42,000.00. Dobosz's primary job responsibility was testing oil solutions.

2.    *Dobosz's September 2005 Injury*

On September 23, 2005, while working as a Technical Service Specialist I, Dobosz injured his neck when he hit his head on a doorway at the ArcelorMittal steel mill; Dobosz was wearing a helmet at the time. Dobosz's treating physician "gav[e] him an ice pack" and told him to take over-the-counter pain medication for his neck pain. Dobosz had pain injections and took anti-inflammatory medication. Dobosz missed at most three days of work due to this injury. During these three days, Dobosz requested that someone cover his job while he was receiving treatment for his injury, and Quaker Chemical had his superiors cover his shifts while he received treatment. Dobosz did not request any additional accommodations for his 2005 injury, and he continued to perform all of the required physical activities at Quaker Chemical that he performed prior to his

---

of Genuine Issues--his own deposition and that of Michelle Carter. In addition, several paragraphs in the Statement of Genuine Issues contain no citation to the record. (Pl. Rep. 3, 7, 9, 10, 11). "[A] lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes . . . .'" *Greer v. Bd. of Educ. of City of Chi., Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (quoting *Waldridge v. Am. Hoechst Corp*., 24 F.3d 918, 921-22 (7th Cir. 1993)) (emphasis added). The Court will not scour the exhibits to find sources, if any, for unsupported statements in Dobosz's Statement of Genuine Issues or Response Brief and, therefore, disregards statements of fact without citation to the record. However, if Dobosz references an exhibit in either the Statement of Genuine Issues or his Response Brief with sufficient specificity, the Court will consider the evidence.

Finally, the Court observes that Dobosz's Statement of Genuine Issues is replete with errors and mischaracterization of the evidence. For example, Dobosz wrote: "The plaintiff said he hardly ever lifted more than 30 lbs. (Ex. 1, Dobosz dep., p. 35, ll. 14-17)." (Pl. Stmt. of Genuine Issues 1). Nowhere in the submitted pages of Dobosz's deposition does he state that he hardly lifted more than thirty pounds; and, the cited portion of the deposition provides: "Check tank levels, monitor meters to see how much water, oil is being used from a day-to-day basis so I know how much they're putting in the tank so I know how much to order when—so they don't run out." (Pl. Resp., Ex. 1, p. 35, ll. 14-17). As another example, Dobosz states that Carter avoided answering a question at her deposition, quoting her as saying, "we were only looking at the 2012 injury." (Pl. Stmt. of Genuine Issues 8) (quoting Pl. Resp., Ex. 2, p. 60, ll. 14-19; p. 61, ll. 1-19). Carter did not avoid answering the question, nor did she state anywhere in the record that "we were only looking at the 2012 injury." Rather, Carter testified, "Quaker viewed the 2012 injury as a completely separate event from the 2005 injury. So the 2012 event that we're speaking about was evaluated on its own." (Pl. Resp., Ex. 2, p. 61, ll. 8-10). Another example is that Exhibit 1 is excerpts from Dobosz's deposition; however, deposition page 37 in Exhibit 1 is from Michelle Carter's deposition and not Dobosz's deposition. The Court will disregard all unsupported facts contained in Dobosz's Statement of Genuine Issues.

injury. On September 25, 2006, Dobosz denied numbness, weakness, or tingling in his arms as a result of the 2005 injury. On December 13, 2006, Quaker Chemical paid Dobosz $5,200.00 for his worker's compensation claim arising out of the 2005 injury. As part of the claims process, a non-treating physician evaluated Dobosz's medical records and determined that Dobosz had a permanent partial impairment affecting four percent of his total person. The 2006 worker's compensation settlement did not contain any work restrictions.

3.      *Dobosz's Promotion to Site Engineer I*

Dobosz worked as a Technical Service Specialist I until Quaker Chemical promoted him to Site Engineer I on March 1, 2008, at the age of fifty-nine years. Dobosz's promotion resulted in more responsibility, more diverse duties, and a higher salary.

4.      *December 2008 OSHA Physical Examination*

On December 8, 2008, Dobosz underwent a routine examination required by OSHA to determine the state of his health and his ability to perform his duties as Site Engineer I. The resulting report, dated January 27, 2009, provided that Dobosz's physical examination was "normal except for symptoms related to a neck injury in 2005." (Def. Mot., Ex. 3). The reviewing physician stated Dobosz was "medically cleared with the following restrictions: No lifting over 35 lbs.; no climbing ladders." (Def. Mot., Ex. 3).

Michelle Carter, the human resources manager for Quaker Chemical, stated that she was not aware of any permanent restrictions stemming from Dobosz's 2005 injury. (Def. Mot., Ex. 2, p. 17). However, Dobosz testified that he had permanent restrictions of no lifting over 35 pounds and no climbing ladders following his 2005 injury. He then testified that the 2009 restrictions were the same as the restrictions following the 2005 injury. Dobosz testified that Quaker Chemical accommodated his restrictions between 2006 and his surgery in 2012 by letting "me do my job the

whole time, even though the doctor says I couldn't do certain things." (Def. Mot., Ex. 1, 171, ll. 7-8). He further testified, "I was doing whatever I needed to do to work. When you're a one-man show, you do what's got to be done. You make the customer happy. Whatever the customer wants, you do, and if you're the only guy on site, you do it." (Def. Mot., Ex. 1, p. 171, ll. 11-15). When he was asked if that means working "outside of [his] restrictions," he responded, "Yes. That's how it works." (Def. Mot., Ex. 1, p. 171, ll. 16, 19).

5.    *Dobosz's April 2012 Injury*

On Friday, April 20, 2012, Dobosz was injured when he slipped and fell on a staircase at ArcelorMittal while working for Quaker Chemical. Dobosz did not immediately seek treatment, and he reported back to work the following Monday, April 23, Tuesday, April 24, and Wednesday, April 25 without incident. Dobosz eventually received extensive physical therapy following his fall, with appointments two or three times per week. Dobosz testified that Quaker Chemical never gave him any trouble regarding the appointments. Human resources manager Michelle Carter testified that, in August 2012, Dobosz told her that he was not supposed to be climbing ladders.

On October 26, 2012, Dobosz underwent a cervical fusion. Lakeshore Bone and Joint Institute ("Lakeshore") provided his follow-up treatment until June 24, 2013. (Def. Mot., Ex. 9, p. 3). Dobosz did not work for almost ten months (October 2012 through August 2013) after his surgery. During this time, Quaker Chemical paid Dobosz his full salary. Quaker Chemical hired Stephen Scott as a temporary worker to fulfill Dobosz's job responsibilities during his absence. Dobosz only met Scott on one occasion for about ten minutes. Dobosz originally believed that he had trained a younger individual that later replaced him; but Dobosz trained a Mr. Feree whom Quaker Chemical subsequently hired to work in an open position at a nearby mill. (Def. Mot., Ex. 1, p. 171-72, 175). At his deposition, Dobosz testified that Feree was working at another steel mill

owned by ArcelorMittal when Dobosz left to have surgery. Upon learning that Quaker Chemical had hired Stephen Scott to replace Dobosz during his absence, Dobosz admitted that his earlier claim that he had been replaced by a younger employee whom he had trained was inaccurate.

On June 24, 2013, Lakeshore released Dobosz with permanent restrictions of "no lifting, pushing, pulling greater than 30 pounds frequently, greater than 30 pounds occasionally. No overhead work." *Id.* at pp. 8-9. Lakeshore found that Dobosz qualified for a permanent partial impairment impacting seven percent of his total person. Quaker Chemical paid Dobosz $16,800.00 to settle his worker's compensation claim related to this injury. Dobosz signed the worker's compensation Compromise Settlement Agreement on September 5, 2013.

6.    *Site Engineer I Job Requirements*

On October 8, 2007, before Dobosz was promoted to the position, Quaker Chemical issued a job description for Site Engineer I. (Def. Mot., Ex. 16). Under the "Physical Demands" heading, the job description provides that the employee "may be required to lift up to 50 pounds," "routinely required to use hands to finger, handle or feel and reach with hands and arms," and "may be required to work in small spaces and high locations." *Id.* at p. 3. Dobosz reviewed the job description during his deposition and agreed generally that the job description accurately described his duties except for one section involving inspecting and maintaining coolant and fluid system filters. Dobosz testified that "everything else is pretty much what I did." (Def. Mot., Ex. 1, p. 33, ll. 13-14).

The August 30, 2012 report prepared by the physical therapy center where Dobosz was treated following his April 2012 injury but before his cervical fusion, provides that Dobosz's "job as Site Engineer, AS DESCRIBED BY THE CLIENT is classified within the MEDIUM-HEAVY physical demand level based on 2 hand OCCASIONAL lift of 50 pounds floor to waist, 2 hand

OCCASIONAL overhead lift of 50 pounds, and pulling forces of 75 hfp." (Def. Mot., Ex. 12, p. 1). The physical therapy report indicates that Dobosz reported that his "work primarily involves moving liquids with OCCASIONAL 2 hand lifting of charged 2-3" hoses from floor to various heights including overhead to pump liquids into various tanks," that "the hoses are fairly heavy," that he occasionally lifts and carries five gallon buckets filled with chemicals that weigh up to fifty pounds, and that he occasionally pulls the charged hoses in 30-40 foot lengths and makes connections with various tanks and tanker trucks, which he estimates is a heavier task. *Id.* at pp. 2-3. Dobosz testified at his deposition that he does not remember telling the physical therapist this information. However, he also testified that, as a part of his course of treatment, he generally described his "routine regular functions at Quaker Chemical." (Pl. Resp., Ex. 1, p. 78, ll. 14-18). In his deposition, he agreed that he was always honest with the physical therapist "with respect to [his] capabilities and the physical requirements of his job." (Def. Mot., Ex. 1, p. 58, ll. 6-9).

In his deposition, Dobosz testified that he lifted the charged two- to three-inch hoses to various heights to fill the chemical tote at the facility. Dobosz testified that he did not lift the five-gallon containers but rather that a co-worker would lift the containers for him; when that co-worker was not available Dobosz would order one-gallon containers. Dobosz also testified that the truck drivers were responsible for handling the hoses although he admitted in his deposition that he occasionally filled the totes with the hoses. In his deposition, Dobosz testified that he did not routinely climb ladders since 2006, but rather climbed ladders perhaps once a month, depending on the work load of the mill. According to Dobosz, he completed most of his tasks by himself, and he stated that he was a "one-man show." (Def. Mot., Ex. 1, pp. 70, 171-72). He also acknowledged that he completed tasks that were outside of his restrictions to "make[] the customer happy." (Def. Mot., Ex. 1, p. 171).

Quaker Chemical issued a "Physical Demands Analysis Accompanied by Job Description" ("Physical Demands Analysis"), a fillable form, with an assessment date of September 6, 2012. The Physical Demands Analysis describes the job duties, responsibilities, and physical requirements of the Site Engineer I position, listing several required physical tasks including ascending or descending ladders, stairs, scaffolding, ramps, and poles; reaching, standing, and walking; and walking, standing, or crouching on narrow, slippery, or erratically moving surfaces. The Physical Demands Analysis shows that a Site Engineer I is required to push, pull, and lift heavy objects including pushing objects weighing 31-45 pounds two times per day; pulling objects weighing between 31-45 pounds two times per day and weighing over 60 pounds once per day; and lifting objects weighing 46-60 pounds two times per day. Under "Physical Requirements," is checked the box for "medium work," described as "exerting up to 50 pounds of force occasionally, and/or up to thirty pounds of force frequently, and/or up to twenty pounds of force constantly to move objects." (Def. Mot., Ex. 10, p. 4). The Site Engineer I is required to climb "fixed industrial stairs, fixed industrial ladders, [and] mobile ladders." *Id*. at p. 5.

Dobosz asserts that he never viewed the Physical Demands Analysis before his deposition and that he did not discuss the document with anyone. Although the Physical Demands Analysis is signed electronically by Dobosz, he does not remember signing it. Dobosz also testified that he did not routinely climb ladders after 2006 but did climb ladders as needed depending on how busy the mill was. Dobosz testified that he told the EEOC investigator that the heaviest thing he had to lift was one quart of solution and steel plates that did not weigh over fifteen pounds. Dobosz testified that sometimes the truck driver would hook up the hose to a pipe to fill the tank and sometimes Plaintiff would fill the totes as frequently as every week to once a month.

*7.*     *Dobosz's Termination*

On June 24, 2013, Dobosz was cleared to return to work by Lakeshore with permanent restrictions, but he did not contact Quaker Chemical to inform anyone of this status update nor did he return to work. Dobosz never requested any accommodation from Quaker Chemical when he was cleared to return to work other than requesting that Quaker Chemical give him his job back. Dobosz believes that he was physically capable of returning to his position as Site Engineer I.

On August 7, 2013, Quaker Chemical sent Dobosz a letter, with the subject line "Workers Compensation Work Status," notifying Dobosz that Quaker Chemical had received a copy of his June 24, 2013 medical release and the list of permanent restrictions and stating that Quaker Chemical was "unable to accommodate [him] in [his] current role of Site Engineer I" in light of his permanent restrictions. (Def. Mot., Ex. 8, p. 1). The letter is signed by Michelle Carter, the human resources manager. After reviewing other Quaker Chemical job openings, Carter and Quaker Chemical's internal and external counsel determined that Quaker Chemical was not "able to identify any current openings in which we can accommodate these permanent restrictions, or for which you are qualified." *Id.*; (Pl. Resp., Ex. 2, p. 11). The letter notified Dobosz that his employment with Quaker Chemical would be terminated unless there was a change in his work conditions or there were other alternatives that he would like them to consider. Dobosz was given a thirty-day notice of termination indicating that his last day of employment would be September 5, 2013. Quaker Chemical requested that Dobosz contact the company immediately if he believed that the company had not considered other alternatives.

In his deposition, Dobosz testified that he called Carter, but he could not recall what was said during that conversation. However, Dobosz remembers calling Carter on August 16, 2013, seeking information regarding his pension and vacation payout. Dobosz testified that he asked

14

Carter if she had another job for him, to which she responded in the negative. Dobosz was unable to recall whether or not he requested any accommodation from Quaker Chemical after receiving the termination letter. In his deposition, Dobosz stated that he thought Quaker Chemical was "going to give [him] [his] job back and let the temporary individual go." (Def. Mot., Ex. 1, p. 143). Dobosz testified that he intended to return to work once he had recovered and believed that even with his permanent restrictions he was physically able to return to work. Finally, Dobosz stated that he told Carter that he "could still do [his] job." (Pl. Resp., Ex. 1, p. 202). Carter did not discuss Dobosz's termination with any of his supervisors and did not consult any treating physician.

8.    *Age Claim: Emails*

Finally, in relation to his age discrimination claim, Dobosz offers two emails. The first, dated June 27, 2013, is from Florence Larcamp to Carter and notes Dobosz's permanent restrictions and indicates that the settlement figure was being calculated. On the email, is handwritten: "Settlement figure by Tuesday. Now we know let him go would not impact settlement . . . ." (Pl. Resp., Ex. 8., p. 3). Carter testified that she did not write the statement on the email and does not know who did. (Pl. Resp., Ex. 2, p. 18). On that same day, a claims specialist from Liberty Mutual Insurance, Quaker Chemical's insurance company, emailed Larcamp discussing the worker's compensation settlement. *See* (Pl. Resp., Ex. 8, p. 2). In the email, the claims specialist states, "He also will become Medicare eligible in November when he turns 65. So we will be required to take Medicare's interests into account with any settlement . . . . [Dobosz] continued to complain of pain and stiffness, and also of swallowing issues. If he retained an attorney, they would likely send him for an evaluation of their own to option[sic] additional treatment requests

and/or to get a higher PPI . . . . Therefore I would like to attempt to settle this sooner than later." *Id.*

## ANALYSIS[3]

Quaker Chemical seeks summary judgment in its favor on Dobosz's claims of disability discrimination under the ADA, age discrimination, and a violation of his due process and equal protection rights under the Fifth and Fourteenth Amendments to the United States Constitution. The Court addresses each in turn.

### A. ADA Claim

In his Complaint, Dobosz alleges that, by refusing to accommodate his restrictions and by terminating his employment, Quaker Chemical violated the Americans with Disabilities Act ("ADA"). The ADA prohibits employers from discriminating against their employees "on the basis of disability." 42 U.S.C. § 12112(a).[4] A plaintiff asserting a failure-to-accommodate claim must show that (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate his disability. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015) (quoting *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013)).

### 1. Disability

Quaker Chemical first argues that Dobosz was not disabled within the meaning of the ADA. To establish that he has a "disability" under the ADA, Dobosz must show either that (1) he

---

[3] As noted by Quaker Chemical, Dobosz cites ten cases in his response brief, seven of which relate to the summary judgment standard. Of the remaining three cases, two address the impact of mitigating measures in relation to an ADA claim, which do not apply in the instant case. It is not the Court's job to comb the record to piece together legal arguments for Dobosz. *See Echemendia v. Gene B. Glick Mgmt. Corp.*, No. 1:05-CV-53, 2005 WL 2406047, at *6 (N.D. Ind. Sept. 27, 2005) (quoting *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("A court need not make the lawyer's case.")).

[4] Because Dobosz's ADA claim arises after January 1, 2009, the ADA Amendments Act of 2008 ("ADAAA") applies. 42 U.S.C. § 12101; *see also Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009).

has a physical or mental impairment that substantially limits him in one or more major life activities; (2) he has a record of an impairment; or (3) Quaker Chemical regarded him as having an impairment. 42 U.S.C. § 12102(1). Dobosz argues that he "had a disability or he was regarded as being disabled from his job." (Pl. Resp. 7). The Court finds that Dobosz meets both definitions.

a.     Impairment that Substantially Limits One or More Major Life Activities

An individual has a "disability" under the ADA if he has a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i). The term "substantially limits" is to "be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). The impairment need not prevent or even significantly restrict someone from performing a major life activity in order to be considered substantially limiting. *See* 29 C.F.R. § 1630.2(j)(1)(ii).

Quaker Chemical argues that Dobosz is not substantially limited in the major life activity of working; the Court agrees. Dobosz would have to show that his disability "'significantly restricted [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Carothers v. Cty. of* Cook, 808 F.3d 1140, 1147 (7th Cir. 2015) (quoting *Povey v. City of Jeffersonville*, 697 F.3d 619, 623 (7th Cir. 2012); citing 29 C.F.R. § 1630 App'x). Dobosz does not attempt to make this showing. In contrast, Dobosz argues that his restrictions do "not limit his ability to continue to do his job," (Pl. Resp. 12), and he testified that he is "physically capable of continuing to do [his] job," (Pl. Resp., Ex. 15, p. 3).

Nevertheless, Dobosz argues that he is substantially limited in the major life activity of lifting, which Quaker Chemical does not address. In his brief, Dobosz discusses the expanded definition of disability under the 2009 amendments to the ADA and comments that "his impairment or his disability did not keep him from doing his job," (Pl. Resp. 6), and that "certainly . . . he had a disability or he was regarded as being disabled from his job." (Pl. Resp. 7). In his Declaration, he states, "I had a disability from lifting certain things, which bothered me for a lot of things I wanted to do, but I was able to do my job . . . ." (Pl. Resp., Ex. 15, ¶ 20). In his brief, he states: "The impairment is certainly substantial when a consenting man is doing major life activities." (Pl. Resp. 5); "In this case, it's Dobosz' position that he didn't have to lift as much at work as he might otherwise in normal life activities." *Id*.; and "Lifting more than 30 lbs., as indicated in Ex. 8, certainly substantially limits a grown man's ability to function in[sic] a normal basis, but did not limit his ability to continue to do his job which had a 35-lb. restriction of over years[sic] before his 2012 injury." *Id*. at 12.

In *Galvin-Stoeff v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis*, the court concluded that the plaintiff's thirty-pound lifting restriction raised at least a factual dispute regarding whether the plaintiff had a physical impairment that substantially limited a major life activity. No. 11-3423, 2014 WL 4056695, at *9 (C.D. Ill. Aug. 15, 2014); *see also* 29 C.F.R. Pt. 1630, app. § 1630.2(j)(1)(viii) ("[S]omeone with an impairment resulting in a 20-pound lifting restriction . . . is substantially limited in the major life activity of lifting."). The same is true here. For purposes of this motion, Dobosz's permanent restriction of lifting no more than thirty pounds constitutes a disability that substantially limits the major life activity of lifting.

b.    Regarded as Having an Impairment

A plaintiff is "'regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); 29 C.F.R. § 1630.2(1) (listing "termination" as a "prohibited action"); *Silk v. Bd. of Trs., Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 706 (7th Cir. 2015).[5] Dobosz has shown that his employment was terminated because Quaker Chemical regarded him as unable to push, pull, or lift thirty pounds frequently and/or occasionally and to do overhead work as a result of the October 2012 cervical fusion, all of which Quaker Chemical acknowledged in the August 7, 2013 letter. Thus, Dobosz has demonstrated that he was regarded as disabled by Quaker Chemical.

2.    *Qualified Individual with a Disability and Reasonable Accommodations*

However, Dobosz cannot show that he was a qualified individual with a disability or that Quaker Chemical could reasonably accommodate his permanent work restrictions. The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see* 29 C.F.R. § 1630.2(m). Courts give "consideration . . . to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). Dobosz

---

[5] In its reply brief, Quaker Chemical cites the previous standard for determining "regarded as" developed by the courts prior to the 2008 amendment to the ADA. (Def. Reply 9). Prior to the 2008 amendments, "'an employee was not 'regarded as' disabled by his employer unless his employer believed he satisfied the definition of 'disabled' under the ADA.'" *Stragapede v. City of Evanston*, 69 F. Supp. 3d 856, 862 n. 3 (N.D. Ill. 2014) (quoting *Steffen v. Donahoe*, 680 F.3d 738, 744-45 (7th Cir. 2012)). However, since the 2008 amendments, "a mere perception of impairment is sufficient to support a regarded as claim." *Sheets v. Interra Credit Union*, No. 1:14-CV-265, 2016 WL 362366, at *4 (N.D. Ind. Jan. 29, 2016) (citing *Silk v. Bd. of Trs., Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 706 (7th Cir. 2015) (applying 42 U.S.C. § 12102(3)(A))).

carries the burden of establishing that he is a qualified individual. *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 911 (7th Cir. 1996).

A two-step test is used to determine whether someone is a "qualified individual" under the ADA. *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 (7th Cir. 2015); 29 C.F.R. § 1630.2(m). First, the Court considers "whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Stern*, 788 F.3d at 285 (citing *Basith v. Cook Cty.*, 241 F.3d 919, 927 (7th Cir. 2001)); 29 C.F.R. § 1630.2(m). The parties do not dispute that Dobosz possessed the necessary prerequisites.

Second, the individual must be able to "perform the essential functions of the position held or desired, with or without reasonable accommodation." *Stern*, 788 F.3d at 285 (citing *Basith*, 241 F.3d at 927); 29 C.F.R. § 1630.2(m); *see also Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002) (affirming the district court's determination that lifting is an essential function of the operator job, refusing to second-guess the employer's judgment, and noting that even the employee admitted that heavy lifting is required at times). Quaker Chemical argues that Dobosz fails the second prong of this test because he was unable to perform the essential functions of his position of Site Engineer I, namely lifting, pushing, and pulling over 30 pounds and overhead work at the time Quaker Chemical terminated his employment.

An "essential function" is a fundamental duty required of a person in his or her employment; a marginal function of the position is not an essential function. *See* 29 C.F.R. § 1630.2(n)(1). Under the regulations,

> [a] job function may be considered essential for any of several reasons, including but not limited to the following:
>
> (i) The function may be essential because the reason the position exists is to perform that function;

(ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2).

In order to determine the essential functions of a specific job, the Court looks at several factors, including "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." *Stern*, 788 F.3d at 285 (quoting *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, & 22nd Judicial Cirs.*, 601 F.3d 674, 679 (7th Cir. 2010); citing 29 C.F.R. § 1630.2(n)(3)). "We presume that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl*, 601 F.3d at 679 (citing *Basith*, 241 F.3d at 928). Factors to consider include:

(i)     The employer's judgment as to which functions are essential;

(ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii)   The amount of time spent on the job performing the function;

(iv)    The consequences of not requiring the incumbent to perform the function;

(v)     The terms of a collective bargaining agreement;

(vi)    The work experience of past incumbents in the job; and/or

(vii)   The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3); *see also Shell v. Smith*, 789 F.3d 715, 717-18 (7th Cir. 2015).

As an initial matter, the Court sustains Quaker Chemical's objection to Dobosz's reliance on the EEOC determination and the EEOC investigator's notes to attempt to create a genuine issue of material fact as to the essential functions of his job. Quaker Chemical objects on the basis that the determination and notes are not admissible or probative; Dobosz did not seek leave to file a response to this objection. The EEOC determination and notes are not admissible because they are inadmissible hearsay and are not probative. *See Stolarczyk ex rel. Estate of Stolarczyk v. Senator Int'l Freight Forwarding*, *LLC*, 376 F. Supp. 2d 834, 838 (N.D. Ill. 2005) (providing a thorough analysis of the admissibility of the EEOC investigator notes under Federal Rule of Evidence 803(8)(c)). The EEOC investigator's notes are merely notes made during interviews he conducted. Dobosz offers the statements in those notes for the truth of the matters asserted therein regarding essential job functions. Both parties have had an opportunity to present their case to this Court, including the opportunity to submit evidence that was offered in the course of the EEOC proceedings. Dobosz had the opportunity in this case to depose the witnesses interviewed during the EEOC investigation and to offer their deposition testimony. For example, he could have taken the deposition of Stephen Scott, the temporary replacement while Dobosz was on medical leave, but has not offered any testimony of Scott. "Justice requires that the testimony of witnesses be given in open court, under oath, and subject to cross-examination." *See Stolarczyk*, 376 F. Supp. 2d at 838-39 (citing *Tulloss v. Near N. Montessori Sch., Inc.*, 776 F.2d 150, 154 (7th Cir. 1985)); *Tulloss*, 776 F.2d at 154 (affirming the district court's refusal to admit the EEOC's entire investigation file, noting the district court's discretion, the potential for prejudice, and the opportunity to admit relevant evidence and testimony). Dobosz cannot rely on the inadmissible hearsay statements in the EEOC report to create a genuine issue of material fact.

In addition, the Court cannot "evaluate the weight [the EEOC determination] deserves, if any, without understanding the evidence presented to the EEOC and whether that evidence is properly admissible in court. That sort of effort will rarely add much to the probative value of the admissible evidence that is actually submitted to the court . . . ." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733 (7th Cir. 2011) (internal citations omitted). Because Dobosz had the opportunity to present all relevant, admissible evidence to the Court on this instant motion, the Court declines to consider either the EEOC's determination or the EEOC investigator's notes.

The Court now considers whether Dobosz has raised a genuine dispute as to whether he could perform the essential functions of his position as Site Engineer I. Quaker Chemical asserts that performing overhead work and lifting, pushing, and pulling over thirty pounds are essential functions of the Site Engineer I job. (Def. Mot. 4); *see* (Def. Mot., Ex. 9, p. 8-9) (June 24, 2013 letter setting forth permanent restrictions).

As noted above, the employer is entitled to substantial deference is determining the essential functions of its positions. *See Vraniskoska v. Franciscan Cmtys., Inc.*, No. 2:11-CV-308, 2013 WL 4647224, *7 (N.D. Ind. Aug. 29, 2013) (quoting *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998) ("Although we look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions, we do not otherwise second-guess the employer's judgment in describing the essential requirements for the job.")); *see also Basith*, 241 F.3d at 929 ("But an essential function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential."). Nevertheless, the Court should not "rubber-stamp an employer's assertions about which functions are essential," because doing so would allow employers to undermine the ADA by creating new essential functions as "post hoc rationalizations for unlawful discrimination." *Hawkins v. George F. Cram Co.*, 397 F. Supp. 2d

1006, 1020-21 (S.D. Ind. 2005). The Court finds that Quaker Chemical has met its burden of pointing to evidence demonstrating these essential functions of the job and that Dobosz has not offered evidence to create a genuine dispute for trial.

First, Quaker Chemical created a job description for the Site Engineer I position on October 8, 2007, before Dobosz was promoted to the position and over five years before his termination. *See* 42 U.S.C. § 12111(8) (a written job description created before advertising or interviewing applicants is evidence of the essential functions of the job); 29 C.F.R. § 1630.2(n)(3) (same); *see also Newell v. Alden Vill. Health Facility for Children and Young Adults*, —F. App'x—,—, No. 15-1245, 2016 WL 3092121, at *3 (7th Cir. June 2, 2016) (concluding that lifting was an essential function of the plaintiff's job because it was a task specified in the employer's job description). The job description lists the physical demands required "to successfully perform the essential functions of" the position, including "may be required to lift up to 50 pounds." (Def. Mot., Ex. 16, p. 3). When asked during his deposition whether this job description was accurate, Dobosz did not dispute the lifting requirement. (Pl. Resp., Ex. 1, p. 32); (Def. Mot., Ex. 1, p. 33).

Second, after his April 20, 2012 injury, Dobosz received physical therapy at Accelerated Rehabilitation Centers. In a Functional Progress Note dated August 30, 2012, Dobosz's physical therapist wrote that *Dobosz* described the physical demands of his job as including occasionally lifting fifty pounds from floor to waist and overhead and moving "fairly heavy" hoses from the floor to various heights including overhead. (Def. Mot., Ex. 12, p. 1, 3-4). The therapist wrote that Dobosz described his work as primarily moving liquids with occasional two-hand lifting of charged 2-3" hoses from the floor to various heights, including overhead; occasionally lifting and carrying five gallon buckets filled with chemicals that weigh up to fifty pounds; and occasionally pulling charged hoses in 30-40 foot lengths to makes connections with various tanks and tanker

trucks, which Dobosz estimated is a heavier task. In his deposition, Dobosz testified that he was honest with his physical therapists about the physical requirements of his job. (Pl. Resp., Ex. 1, p. 58). When Dobosz was read portions of the report and was asked whether this was what he reported to his physical therapists, Dobosz testified that he "didn't remember." (Pl. Resp., Ex. 1, p. 58); (Def. Mot., Ex. 1, p. 76-7). Dobosz's failure to remember relaying this information to his physical therapist does not show that Quaker Chemical is fabricating or overstating the physical requirements of the Site Manager I position. Dobosz does not identify any testimony in which he disagreed with the statements made to his physical therapist.

Next, Quaker Chemical completed a Physical Demands Analysis, a fillable computer form with an "assessment date" of September 6, 2012, that lists the "Physical Activity" of the Site Engineer I position, including: climbing fixed industrial stairs, fixed industrial ladders, and mobile ladders; reaching in any direction regularly; pushing and pulling objects weighing 31-45 pounds twice per day; and lifting objects weighing 46-60 pounds twice per day. (Def. Mot., Ex. 10, p. 1, 3-4, 6); (Def. Mot., Ex. 15). Under "Physical Requirements," the box for "Medium work" is checked, which is defined as "[e]xerting up to 50 pounds of force occasionally, and/or up to 30 pounds of force frequently, and/or up to 10 pounds of force constantly to move objects." (Def. Mot., Ex. 10, p. 4). This is consistent with the 2007 job description. The form also provides requirements for visual acuity and lists eleven different environmental conditions, chemical exposures, and mandatory equipment. Michelle Carter, Quaker Chemical's human resources manager, testified that Quaker Chemical completes a Physical Demands Analysis "as part of [its] workers' [compensation] analysis and short term disability analyses." (Pl. Resp., Ex. 2, p. 44).

Carter testified that Craig Hladik, Dobosz's former manager, prepared the Physical Demands Analysis with Dobosz, noting that the form was electronically signed by both. However,

Dobosz testified that he did not sign the Physical Demands Analysis, despite the presence of his electronic signature on the document, and that he never saw the Physical Demands Analysis until it was shown to him at his deposition. (Def. Mot., Ex. 1, p. 84-5); (Pl. Resp., Ex. 15, p. 3). Although the fact that he did not see or sign the form is immaterial, the fact that his electronic signature is on the form without his knowledge is curious when viewed in the light most favorable to Dobosz.

Dobosz asserts in his Declaration that he did not do "most" of the "things" listed in the Physical Demands Analysis, but he does not specify which "things" he never had to do. (Pl. Resp., Ex. 15, ¶ 13). He also stated that most of the responsibilities listed in the Physical Demands Analysis were not done every day. (Pl. Resp., Ex. 15, p. 3-4). However, just because Dobosz was not required to do some of the physical tasks daily does not mean that the physical tasks were not essential functions. *See Basith*, 241 F.3d at 929. Notably, Dobosz does not state in his Declaration that he was not required to lift over thirty pounds and up to fifty pounds frequently or occasionally or that he was not required to do overhead work; rather, his statements regarding his abilities are couched in terms of his general belief that he could continue to do his job.

Dobosz argues that the Physical Demands Analysis was "designed by [Quaker Chemical] as a ruse to terminate the plaintiff and to 'let him go' while . . . protect[ing] them from an ADA claim." (Pl. Resp. 2). This accusation, standing alone, is not evidence. *See Mays v. Grand Daddy's, LLC*, No. 14-CV-461-SLC, 2015 WL 4373565, at *1 (W.D. Wis. July 15, 2015) ("Conclusory allegations and self-serving affidavits, unsupported by the record, will not preclude summary judgment." (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)); *see also Basith*, 241 F.3d at 928 (same). To support this allegation, Dobosz asserts that the Physical Demands Analysis was created "just a few months prior to their deciding to terminate him." (Pl. Resp. 2). This is incorrect. The Physical Demands Analysis is dated September 7, 2012, which is

over a month before Dobosz had the cervical fusion, over nine months before the physical therapist released him with permanent restrictions, and eleven months before Carter sent the August 7, 2013 Workers Compensation Work Status letter notifying Dobosz of his termination effective September 5, 2013. Dobosz offers no evidence to support his contention that the Physical Demands Analysis was created for an improper purpose.

Dobosz's own deposition testimony indicates that he lifted more than thirty-five pounds as a Site Engineer 1. He testified that he was a "one-man show," carrying out most of his duties by himself. (Def. Mot., Ex. 1, p. 171). Although Dobosz argues that Quaker Chemical is overstating the physical responsibilities of a Site Engineer I, Dobosz himself admitted in his deposition that, following his first injury in 2005, he ignored the restrictions of no lifting over thirty-five pounds and no climbing ladders. (Def. Mot., Ex. 1, p. 171). He stated that he "was doing whatever [he] needed to do to work. When you're a one-man show, you do what's got to be done . . . ." (Def. Mot., Ex. 1, p. 171). When he was asked if that means working "outside of [his] restrictions," he responded "[y]es. That's how it works." (Def. Mot., Ex. 1, p. 171). Thus, Dobosz's own testimony is that his job required him to do lifting in excess of 35 pounds. As for lifting hoses, Dobosz both testified that he lifted the charged two- to three- inch hoses to various heights to fill the chemical tote at the facility while also testifying that the truck drivers were responsible for handling the hoses but that he nevertheless occasionally filled the totes.

Dobosz submitted the Declaration of Brian King, a former co-worker, in which he states that he never witnessed Dobosz "carrying what looked to be *over* 50 [pounds], or being required to lift *over* 50 [pounds]." (Pl. Resp., Ex. 14, p. 2) (emphasis added). However, Dobosz's restrictions prevented him from lifting over thirty pounds, and the job description states that a Site Engineer I may be required to lift *up to* fifty pounds. (Def. Mot., Ex. 16, p. 3). As a result, King's

statement regarding lifting *over* fifty pounds does not conflict with the essential job function of lifting as defined by Quaker Chemical and does not create a genuine issue of material fact. *See Basith*, 241 F.3d at 928 (finding that an "affidavit of a co-worker regarding the functions of the [plaintiff's] job . . . [did] not offer any evidence that conflict[ed] with the essential job functions as defined by [the employer]").

Finally, any restrictions Dobosz had from his 2005 injury, which were determined in 2009 following a physical to be no lifting over thirty-five pounds and no climbing ladders, were different from the June 2013 permanent restrictions following his recovery from the October 2012 cervical fusion of no lifting, pushing, or pulling over thirty pounds and no overhead work. Notably, Dobosz never returned to work after his October 2012 cervical fusion and, thus, cannot say that he worked with his current permanent restrictions. The fact that Dobosz previously worked in excess of his 2009 restrictions resulting from his 2005 head injury is not evidence that he can do work in excess of his 2013 limitations resulting from his slip and fall and the resulting cervical fusion. The earlier injury, the resulting restrictions, and Dobosz's decision to do work that exceeded those restrictions does not create a genuine issue of material fact as to whether he can perform the essential job functions with his current restrictions.

Even if the Court disregards the Physical Demands Analysis (because of the concerns Dobosz raises regarding his signature on the form when he had never seen or signed the form), the 2007 job description, Dobosz's own description of the physical demands of his job as reported to his physical therapist, and Dobosz's own testimony regarding exceeding his prior restrictions of not lifting over thirty-five pounds show both that lifting over thirty pounds is an essential function of the job of Site Engineer I and that Dobosz lifted more than thirty pounds as a Site Engineer I.

Dobosz has not presented enough evidence for the Court to second guess Quaker Chemical's judgment regarding the essential functions of a Site Engineer I.

Based on the foregoing, Dobosz has failed to show that he could perform the essential functions of a Site Engineer I without accommodation. Thus, the Court considers whether Dobosz offered evidence that he could fulfill these requirements *with* accommodation. A reasonable accommodation includes "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). An employer does not have to make an accommodation that would "impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A); *see also Schwab v. N. Ill. Med. Ctr.*, 42 F. Supp. 3d 870, 884 (N.D. Ill. 2014). Examples of a reasonable accommodation applicable to this case include job restructuring and reassignment to a vacant position, although Dobosz does not argue for either. *See* 42 U.S.C. § 12111(9)(B).

As for the latter, the plaintiff bears the "burden to demonstrate that a vacant position exists." *See Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 856 (7th Cir. 2015). And, the ADA only requires an employer to reassign an employee to a position for which he is qualified. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498-99 (7th Cir. 1996). In the August 7, 2013 letter, Quaker Chemical writes that it had reviewed other Quaker Chemical job openings and had "not been able to identify any current openings in which we can accommodate these permanent restrictions or for which you are qualified." (Def. Mot., Ex. 8). The letter also states that Dobosz should contact Quaker Chemical immediately if he believes there to be any other alternatives that Quaker Chemical had not considered. (Def. Mot., Ex. 8). Dobosz does not argue that he should have been

accommodated with a vacant position and, thus, has not offered any evidence of an open position for which he was qualified with his restrictions.

Dobosz states in his Declaration that returning to his job "is the only accommodation I needed as far as I was concerned because I had been doing my job for many years with a permanent impairment and restrictions as to lifting weight." (Pl. Resp., Ex. 15, ¶¶ 15-16). This logic is circular; returning to the same job with essential functions that exceed his restrictions does not constitute an accommodation. Dobosz ignores the conflict between the June 24, 2013 restrictions of no lifting, pushing, or pulling over thirty pounds and no overhead work and the essential functions of the job that require both overhead work and lifting up to fifty pounds. *See Wheatley v. Factory Card and Party Outlet*, —F.3d—,—, No. 15-2083, 2016 WL 3244881, at *4 (7th Cir. June 13, 2016) (citing *Basden v. Prof'l Transp. Inc*., 714 F.3d 1034, 1037 (7th Cir. 2013) ("In response to an employer's motion for summary judgment, it is the plaintiff's burden to produce evidence sufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation.")).

Quaker Chemical is not required to ignore the doctor's permanent work restrictions simply because Dobosz asks it to. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 n. 5 (7th Cir. 2013) ("If the doctor has given an employee a permanent work restriction and the employee has been paid worker's compensation benefits based on a permanent restriction, the employee's lay opinion that the restriction should no longer apply isn't sufficient to raise a genuine issue of material fact."). Nor is Quaker Chemical required to assign another person to perform those essential functions that Dobosz's restrictions prohibit. *See id.* at 535 ("The accommodation [plaintiff] seeks—another person to perform an essential function of the job she wants—is, as a matter of law, not reasonable, so [the employer] isn't required to show the accommodation would create an undue hardship.").

Finally, although job restructuring may constitute a reasonable accommodation, Quaker Chemical does not have to eliminate, reassign, or alter the essential functions of a Site Engineer I to accommodate Dobosz, and, Dobosz did not propose any such restructuring as an accommodation. *See Shell*, 789 F.3d at 720-21; *Basith*, 241 F.3d at 929-30.

Dobosz has not offered evidence to dispute that, at the time Quaker Chemical terminated his employment, he was a qualified individual with a disability because he was restricted from lifting, pushing, and pulling more than thirty pounds and from doing overheard work and, thus, could not perform the essential functions of a Site Engineer I with or without accommodations. As a result, the Court grants the Motion for Summary Judgment in favor of Quaker Chemical on Dobosz's ADA claim.

## B. Age Discrimination

In his Complaint, Dobosz alleges that Quaker Chemical intentionally discriminated against him based on his age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"). However, age is not a protected class under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (providing that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"). Dobosz does not allege in his Complaint or argue in his brief that Quaker Chemical discriminated against him based on any of the classes protected under Title VII. Therefore, any Title VII claim Dobosz may have brought fails as a matter of law and the Court grants summary judgment in favor of Quaker Chemical on any Title VII claim.

Because a plaintiff is not required to plead legal theories, the Court considers Dobosz's allegations of age discrimination under the Age Discrimination in Employment Act of 1967

("ADEA"). *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999) ("Federal Rule of Civil Procedure 8(a) requires a 'short and plain statement of the claim'; it does not require the plaintiff to plead legal theories."); *see also ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Protection Dist.*, 973 F. Supp. 2d 839, 841 (N.D. Ill. 2013) ("[A] complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as 'relief is possible under any set of facts that could be established consistent with the allegations.'" (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992) (quoting *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992))). In his 20-page response brief, Dobosz dedicates a single, two-sentence paragraph to his age discrimination claim, stating that he "believes he adequately stated his claim for age discrimination" and referencing two emails.[6] Whether Dobosz stated a claim of age discrimination in his Complaint is irrelevant on this motion for summary judgment when he must demonstrate a genuine dispute of material fact for trial.

Under the ADEA, it is unlawful for an employer to discharge an individual because of the individual's age. 29 U.S.C. § 623(a)(1). A plaintiff may survive summary judgment under either the direct or indirect methods of proof. *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). Although the Seventh Circuit Court of Appeals has suggested moving to a simplified analysis of "whether a reasonable jury could infer prohibited discrimination and an adverse employment action based on that discrimination," the court has continued to apply the traditional tests. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014) (quoting *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013) (internal citations omitted)); *see also Hussain v. Fed. Express Corp.*, No. 15-2967, 2016 WL 4004511, at *3 (7th Cir. July 26, 2016). A plaintiff cannot prevail on his

---

[6] Although Dobosz does not cite the emails in his Statement of Genuine Issues, he cites them in his response brief.

ADEA claim unless he can produce evidence from which a jury could infer that his age was the "but-for" cause of his termination. *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

Under the direct method, a plaintiff asserting an ADEA claim can proceed by presenting direct or circumstantial evidence. *See Roberts v. Columbia Coll. Chi.*, 821 F.3d 855, 865 (7th Cir. 2016). Direct evidence is evidence that, "if believed by the finder of fact, will prove the particular fact in question without reliance upon inference or presumption." *Volovsek v. Wis. Dep't of Agric.*, *Trade and Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003) (quoting *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997)) (internal quotation marks omitted); *see also Hutt v. AbbVie Prods. LLC*, 757 F.3d 687, 691 (7th Cir. 2014) (noting that the direct method "requires an admission of discriminatory intent i.e. smoking gun evidence") (quoting *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014) (internal quotation marks omitted). Quaker Chemical argues that there is no direct evidence of age discrimination, and Dobosz offers none. As Quaker Chemical notes, Quaker Chemical hired Dobosz at fifty-four years old and promoted him at fifty-seven years old.

To survive summary judgment with circumstantial evidence, Dobosz may combine various types of evidence to present a "convincing mosaic" of circumstantial evidence, such as suspicious timing, ambiguous statements or behavior toward other employees, evidence that similarly situated younger employees systematically receive better treatment, or evidence that the reason offered by Quaker Chemical for his termination was pretextual. *Teruggi v. CIT Group/Cap. Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013). In his response brief, Dobosz asserts that employees from Quaker Chemical "talked about his age" in emails, identifying two such emails. (Pl. Resp. 14). "[A] particular remark can provide an inference of discrimination when the remark was (1) made by the

decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (citing *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652-53 (7th Cir. 2000)); *see also Harris v. Bath & Body Works, LLC*, No. 14 C 3886, 2015 WL 8778145, at *4 (N.D. Ill. Dec. 15, 2015) ("Plaintiff's suspicion that her age may have been a factor in the way she was treated is not enough.").

The first email is from Michelle Carter to Florence Larcamp dated June 27, 2013, and the email itself does not reference Dobosz's age; it addresses the impact of the permanent work restrictions on the worker's compensation settlement. On a printout of this email, in handwriting, is written: "settlement figure by Tuesday. Now we know let him go would not impact settlement . . . ." (Pl. Resp., Ex. 8. p. 3). Carter testified that she did not write this statement on the email and does not know whose handwriting it is. More importantly, the handwritten note does not reference Dobosz's age.

The second email was sent the same day by a claims specialist from Liberty Mutual Insurance, Quaker Chemical's insurance company, to Larcamp regarding the worker's compensation settlement: "He also will become Medicare eligible in November when he turns 65. So we will be required to take Medicare's interests into account with any settlement. That means a portion of the settlement will need to be set aside by the claimant for medical." *Id*. at 2. First, Dobosz has not offered evidence that Larcamp or the insurance claims specialist were involved with the decision to terminate his employment. *See Fleishman*, 698 F.3d at 605 ("[A] nondecisionmaker's animus is not evidence that the employer's actions were on account of the plaintiff's age."). Second, both emails were sent approximately two months prior to his termination, which was not contemporaneous with Dobosz's termination. *See Swenson v. Salient Corp.*, 559 F. App'x 537, 539 (7th Cir. 2014) ("Because the comments preceded [the employee's]

discharge by nearly two months, they were not contemporaneous to the firing."); *see also Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002) (statements made two months before termination were not contemporaneous). Finally, the email discussing Dobosz's Medicare eligibility is not in relation to Quaker Chemical's decision to terminate Dobosz but rather to Dobosz's worker's compensation claim. *See Coryell v. Liberty Mut. Ins. Co.*, 329 F. App'x 657, 658 (7th Cir. 2009) ("[I]n compliance with the Medicare Secondary Payer Act, 42 U.S.C. § 1395y, the parties set aside a portion of the settlement for future injury-related medical expenses so that Medicare would not be burdened with those costs.").

Considering the evidence in a light most favorable to Dobosz, the emails show that Quaker Chemical was discussing the termination of his employment in June 2013 and that the workman's compensation claim would have to be adjusted to comply with federal law due to Dobosz becoming eligible for Medicare. A reasonable juror could not infer age discrimination from either of these emails. *See also Fleishman*, 698 F.3d at 603 ("[F]undamentally the plaintiff must connect the circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons.").

Therefore, the Court turns to the indirect method under the familiar burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973). In order to establish a prima facie case of age discrimination, a plaintiff must show that "(1) he is a member of a protected class; (2) he was . . . meet[ing] his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in his protected class were treated more favorably." *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010). If a plaintiff establishes a prima facie case of age discrimination, the burden shifts to the defendant to provide evidence of a legitimate, nondiscriminatory explanation for its actions. *Id.* at

600. If the defendant meets its burden, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the reason proffered by the defendant is a pretext for discrimination. *Id.* (citing *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010)).

As to the prima facie case, Quaker Chemical does not dispute that Dobosz is a member of a protected class under the ADEA because he is over forty years old and concedes that Dobosz's termination constituted an adverse employment action. However, Quaker Chemical contends that Dobosz cannot show that he was able to meet Quaker Chemical's legitimate expectations and has not demonstrated that a similarly situated employee not in his protected class was treated more favorably.

It is on the latter element that Dobosz fails to make out a prima facie case as Dobosz has not identified a comparator. *Chaib*, 744 F.3d at 984 ("[W]ithout similarly situated comparators, no inference of discrimination arises and [Plaintiff's] . . . claims fail under the indirect method."); *see Huang v. Cont'l Cas. Co.*, 754 F.3d 447, 451 (7th Cir. 2014). "The indirect method requires the identification of similarly situated comparators because [a]ll things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Chaib*, 744 F.3d at 984 (quoting *Perez*, 731 F.3d at 704 (internal quotation marks omitted)).

A plaintiff can satisfy this prong of the *McDonnell Douglas* test by showing that he was replaced with a "substantially younger" employee who was similarly situated, although no inference can be drawn when the replacement is insignificantly younger. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Runyon v. Applied Extrusion Techs., Inc.*, 619 F.3d 735, 740 (7th Cir. 2010); *Hoffmann v. Primedia Special Interest Publ'ns*, 217 F.3d 522, 524

(7th Cir. 2000) ("[W]here a single employee is let go and another individual is hired instead, the fourth requirement means showing that the discharged worker was replaced with someone substantially younger.").

In his Complaint, Dobosz identifies one potential comparator, alleging that he "had an assistant [who] was hired prior to the [his] termination whom he was training who was much younger than [him] . . . ." (Compl. 3). However, through discovery, Dobosz admitted in his deposition that this allegation was inaccurate. Originally, Dobosz believed that Quaker Chemical planned to replace him with Feree, the younger man he had trained. However, Feree did not replace Dobosz as Site Engineer I because, before Dobosz had surgery, Quaker Chemical hired Feree to work in an open position at Indiana Harbor East, a nearby but separate facility. Instead, Quaker Chemical hired Stephen Scott as a temporary replacement during Dobosz's medical leave; Dobosz only met Scott for ten minutes. Dobosz has not provided any evidence of Scott's age. Thus, Scott cannot be a comparator. *See Han v. Whole Foods Market Grp., Inc.*, 44 F. Supp. 3d 769, 793 (N.D. Ill. 2014) (stating that the plaintiff failed to provide the court with any evidence of his alleged comparator's age and "[t]his alone prevents [the plaintiff] from using [that employee] as a comparator" (citing *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007)). Moreover, the evidence of record is that Quaker Chemical hired a temporary employee to fulfill Dobosz's responsibilities until Dobosz returned to work. Dobosz offers no evidence that Quaker Chemical sought a younger temporary employee to ultimately take his place. Because Dobosz has not shown that a similarly situated employee not in his protected class was treated more favorably, he cannot establish a prima facie case of age discrimination. As a result, the Court need not examine whether Dobosz was meeting Quaker Chemical's legitimate expectations.

Even if Dobosz met his burden of making out a *prima facie* case of age discrimination, Quaker Chemical has articulated a legitimate, nondiscriminatory reason for its decision to terminate Dobosz. Quaker Chemical did so after learning of Dobosz's permanent physical restrictions and determining that those restrictions were incompatible with the job responsibilities of a Site Engineer I. As a result, the burden shifts back to Dobosz to establish that Quaker Chemical's reason is a pretext for discrimination. *See Vaughn*, —F. Supp. 3d—,—, 2016 WL 2866416, at *6 (N.D. Ill. Feb. 16, 2016) ("[T]he only question for the Court is whether the employer's proffered reason was pretextual, meaning that it was a lie.") (internal quotation marks omitted). As set forth in the previous section, the evidence of record is that an essential function of the Site Engineer I position is lifting up to 50 pounds, which Dobosz was precluded from doing with his permanent restriction of no lifting over 30 pounds.

However, Dobosz argues that, after he was medically released with permanent restrictions in June 2013, he was "physically able" to "go back to work." (Pl. Resp., Ex. 1, p. 114). Other than Dobosz's own general assertions, Dobosz has not provided any evidence that he could fulfill the duties of a Site Engineer I and, therefore, meet Quaker Chemical's legitimate expectations with his new restrictions. Although Dobosz appears to believe that Quaker Chemical should have disregarded his permanent restrictions and allowed him to return to the position, Quaker Chemical cannot be expected to substitute its judgment of Dobosz's "physical limits in the face of uncontroverted medical opinions." *Staszak v. Kimberly-Clark Corp.*, No. 01 C 3631, 2002 WL 1858788, at *4 (N.D. Ill. Aug. 12, 2002); *see also Covelli v. Nat'l Fuel Gas Distrib. Corp.*, No. 99-CV-0500E(M), 2001 WL 1823584, at *7 (W.D.N.Y. Dec. 6, 2001) ("[Plaintiff's] allegation that defendant did not properly work with him to lift his medical restrictions and determine whether he could perform the essential functions of [his position] does not go to establish that defendant's

asserted non-discriminatory reason is false or unworthy of belief . . . . ”). Thus, Dobosz cannot show pretext and cannot survive summary judgment under the indirect method.

Because Dobosz cannot demonstrate an ADEA claim under either the direct or indirect methods of proof, the Court grants the Motion for Summary Judgment in favor of Quaker Chemical on Dobosz's age discrimination claim.

### C. Constitutional Violations - § 1983

In the "Preliminary Statement" of his Complaint, Dobosz alleges that Quaker Chemical discriminated against him under the "Fifth and Fourteenth Amendment due process and equal protection guarantees of the Constitution of the United Sates[sic] through 42 U.S.C. § 1983." (Compl. 1). There are no other references to a constitutional violation or a § 1983 claim in the Complaint.

A claim may be brought under § 1983 only against a person who was acting "under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Colombia." 42 U.S.C. § 1983 (emphasis added). Quaker Chemical argues that there is no evidence of record that Quaker Chemical is a state actor or that any of its employees acted under the color of state law. *See Wilson v. McRae's, Inc.*, 413 F.3d 692, 693 (7th Cir. 2005); *see also Mufti v. Lynch*, —F. Supp. 3d. —, —, 4:15-CV-97, 2016 WL 3181857, at *3 (N.D. Ind. June 7, 2016). Dobosz did not respond to this portion of Quaker Chemical's Motion for Summary Judgment; thus, any argument he may have in support of a § 1983 claim is waived. *See, e.g.*, *Palmer v. Marion Cty.*, 327 F.3d 588, 597-98 (7th Cir. 2003); *Laborers Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999). Because there is no evidence that Quaker Chemical was a state actor, the Court grants the Motion for Summary Judgment on Dobosz's § 1983 claim.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant Quaker Chemical Corporation's Motion for Summary Judgment [DE 21]; **GRANTS in part** and **DENIES in part** Defendant Quaker Chemical Corporation's Motion to Strike the Unsworn Statements of Brian King and Thomas Dobosz [DE 33]; and **DENIES as moot** Plaintiff's Motion to Substitute Exhibits [DE 34]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

So ORDERED this 16th day of August, 2016.

_____            s/ Paul R. Cherry_____
                                           MAGISTRATE JUDGE PAUL R. CHERRY
                                           UNITED STATES DISTRICT COURT